## UNITED STATES v. BARNABY.

*(Circuit Court, D. Montana. June 7, 1892.)*

1. **ASSAULT WITH INTENT TO MURDER—INDICTMENT.**
   An indictment for an attempt to commit murder is insufficient where it merely charges that defendant made an assault with a knife upon a person named, with intent him to kill, willfully, feloniously, and of his malice aforethought, without disclosing the character of the knife, or averring that he struck him with it or inflicted any wound having a tendency to produce death.

2. **ASSAULT—PLACES UNDER FEDERAL JURISDICTION.**
   There is no punishment provided by the laws of the United States for a simple assault by one private person upon another in places under the exclusive jurisdiction of the government.

3. **CRIMINAL LAW—ADOPTING STATE LAWS.**
   Rev. St. § 5391, providing that when an offense not provided for by the laws of the United States is committed in a place ceded to the government, the same shall be subject to the same penalties provided for the like offense by the laws "now in force" of the state in which such place is situated, applied only to state statutes existing at the time of its passage, in 1825. *U. S.* v. *Paul,* 6 Pet. 141, followed.

4. **SAME—INDIANS—CRIMES ON RESERVATION.**
   Even if this statute could be considered as applicable to the law of Montana, it does not apply to an offense committed by one Indian against another on the Flathead reservation, because Indians living in the tribal relation are not subject, in their internal social relations, either to the laws of the states or of the United States.

At Law. Indictment of Adolph Barnaby, a Flathead Indian, for an assault with intent to murder, committed on the Flathead reservation, against another Indian of the same tribe. Verdict of guilty. Heard on motion in arrest of judgment. Motion sustained, and prisoner discharged.

*Elbert D. Weed,* U. S. Atty., and *John M. McDonald,* Asst. U. S. Dist. Atty.

*Crutcher & Garland* and *Chas. Conradis,* for defendant.

KNOWLES, District Judge. The defendant was charged in the indictment in this case with an assault with the intent to commit murder. He was tried and by the jury found guilty of this offense. Counsel for defendant now come into this court and move the court that the judgment herein be arrested. Among the grounds for this motion are that the indictment alleges no offense known to the laws of the United States; that for the crime alleged in the indictment and proven at the trial there is no punishment provided by the United States laws. Upon an examination of the statutes of the United States, I find no such crime named as an assault with the intent to commit murder. There is a punishment provided in the 5342d section of Rev. St. U. S. for the crime of an attempt to commit murder or manslaughter by any means not constituting an assault with a dangerous weapon. I suppose the meaning of this latter clause, not constituting an assault with a dangerous weapon, means nothing more than that the attempt to commit murder must amount to something more or different from that of an assault with a dangerous weapon, because such an assault is made a crime of itself. In the crime of an attempt to commit murder, or an assault with the intent to commit

murder, there is the ingredient of malice aforethought, express or presumed. When this ingredient in a crime exists, although the assault may be accompanied with the use of a deadly weapon, I should think there would be no difficulty in maintaining a proper charge of an attempt to commit murder. The facts stated would constitute something more than an assault with a deadly weapon, and not that alone. The indictment in this case charges that the defendant made an assault with a knife upon one Alexander Ashley with the intent him to kill willfully, feloniously, and of his malice aforethought. There is no charge that the defendant struck Ashley with this knife or inflicted upon him any wounds or battery which would have had the tendency to produce death. There are no allegations as to the character of the knife used. The question is then presented as to whether the indictment shows sufficient to warrant the court in saying that it appears that the crime of an attempt to commit murder is presented. "The word 'attempt' signifies both the act and the intent with which the act is done." 2 Bish. Crim. Proc. §§ 88, 89. In speaking of an indictment for an attempt, the same author says, (section 92:) "The attempt may be a crime or may not be, and the indictment should state such facts as will enable the court to see whether the particular attempt constitutes a crime or not." An "assault" is generally defined to be an unlawful attempt coupled with a present ability to commit a violent injury upon the person of another. When a simple assault is alleged, a court cannot judicially see whether or not it is of such a nature, if consummated, death would ensue. From the very nature of the definition it will be seen that a court cannot see from such a charge that it involves an act which would effectuate the purpose alleged. 1 Whart. Crim. Law, § 190, says: "In indictments for attempts the laxity in assaults will not be maintained." That author gives as a reason for this that the term "assault" is one "which describes an act easily defined, and asserts a consummated offense;" while "'attempt' is a term peculiarly indefinite." "It has no prescribed legal meaning; it relates, from its nature, to an unconsummated offense." Again, he says, in section 192: "On the same reasoning, in an indictment for an attempt to commit a crime, it is essential to aver that the defendant did some act which, directed by a particular intent to be averred, would apparently result, in the ordinary and likely course of things, in a particular crime." The same rule is expressed, in effect, in section 749 *et seq.*, 2 Bish. Crim. Law. It will be seen from these authorities that there were not sufficient facts set forth in the indictment in this case to warrant the court in holding that the attempt to commit murder or manslaughter was charged. Generally the crime of assault with the intent to commit murder is defined by statute law. When so defined, if the indictment follows substantially the language of the statute in charging the offense, it will generally be sufficient, but when not so defined facts must be alleged which will make the crime judicially appear.

The question arises as to whether or not the crime of an assault does not appear sufficiently in the indictment. It is charged that the defendant made an assault upon Ashley. There is, however, no punishment pro-

vided for a simple assault committed in a place within the exclusive jurisdiction of the United States, except in specified cases, of which the one under consideration is not classed.    There is a punishment provided for an assault committed by one belonging to the navy, which is to be decreed by a court-martial; there is a punishment provided for an assault committed upon a public minister; an assault upon the high seas is punished; one committed by a person in the army, in time of war, or upon a superior officer in the army, or upon a letter carrier, or on officers by seaman, or upon an officer authorized to execute process, or upon a customhouse officer, when in the execution of duty, is each punished by provisions of statute.    It will be seen that the special instances here named do not include an assault of one person upon an another in any such place as an Indian reservation.    It is a settled rule in federal jurisprudence that there are no common-law offenses against the United States, and that no punishment can be inflicted for any common-law offenses unless the punishment therefor is specially provided for by congress.    It is claimed, however, that there are two statutes of the United States which provide for the punishment of the crime in question. The first of these is found in 23 St. at Large, p. 385, § 9, and is as follows:

"That immediately upon and after the date of the passage of this act all Indians, committing against the person or property of another Indian or other person any of the following crimes, namely, murder, manslaughter, rape, assault with intent to kill, arson, burglary, and larceny, within any Territory of the United States, and either within or without an Indian reservation, shall be subject therefor to the laws of such Territory relating to said crimes, and shall be tried therefor in the same courts and in the same manner, and shall be subject to the same penalties, as are all other persons charged with the commission of said crimes, respectively; and the said courts are hereby given jurisdiction in all such cases.    And all such Indians committing any of the above crimes against the person or property of another Indian or other person within the boundaries of any state of the United States, and within the limits of any Indian reservation, shall be subject to the same laws, tried in the same courts, and in the same manner, and subject to the same penalties, as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States."

Montana has ceased to be a Territory, and hence the first part of the above section does not apply.    As I have shown, the punishment for the crime of an assault with intent to commit murder or manslaughter, nor the crime of assault, except in enumerated cases, is not established by a United Statutes statute, although committed within a place within the exclusive jurisdiction of the United States.    An assault with intent to kill is not the same offense as an assault with the intent to commit murder.    There may not exist in the former the element of malice aforethought; there may be an unlawful and intentional killing, which does not amount to murder.    *State* v. *Hill*, 4 Dev. & B. 491, Hor. & T. Cas. 199; *Com.* v. *Drum*, Id. 190.    If an assault with the intent to kill was the same crime as an assault with the intent to commit murder, no punishment is provided for either.

The second of the statutes before alluded to is as follows:

"If any offense be committed in any place which has been or may hereafter be ceded to and under the jurisdiction of the United States, which offense is not prohibited, or the punishment thereof is not specially provided for, by any law of the United States, such offense shall be liable to and receive the same punishment as the laws of the state in which such place is situated, now in force, provide for the like offense when committed within the jurisdiction of such state; and no subsequent repeal of any such state law shall effect any prosecution for such offense in any court of the United States." Section 5391, Rev. St. U. S.

This statute has been construed by the supreme court in the case of *U. S.* v. *Paul,* 6 Pet. 141, and held to apply to state statutes punishing crimes which existed at the time of the passage of this statute. This decision has at no time been reversed or doubted by that court, and was a contemporaneous judicial construction of the same, and should be adhered to. Considering the language of the statute, (and I do not see how any other conclusion could be reached,) congress might be willing to adopt the laws of a state which existed at the time of the passage of a statute by it, but would hardly be willing beforehand to adopt all the criminal statutes a state might in future enact. A statute to this effect might be classed as delegating legislative authority, which is not proper. This statute was passed in 1825. But the construction contended for, namely, that it applied to any laws which might exist in any state, at any time when a place might be ceded by it to the United States, brings us to no different conclusion. In the case of *U. S.* v. *Kagama,* 118 U. S. 375, 6 Sup. Ct. Rep. 1109, the supreme court, in speaking of Indian tribes, said:

"They were and always have been regarded as having a semi-independent position when they preserved their tribal relations, not as states, not as nations, not as possessed of the full attributes of sovereignty, but as a separate people, with the power of regulating their internal social relations, and thus far not brought under the laws of the Union or of the state within whose limits they resided."

This view was largely supported by the cases of *Cherokee Nation* v. *Georgia,* 5 Pet. 1; *Worcester* v. *Georgia,* 6 Pet. 515. The evidence in this case showed that the defendant and the witness Ashley, upon whom the offense was committed, were both members of the Flathead tribe of Indians, under the charge of an Indian agent. It is safe, therefore, to assert that Montana could pass no criminal statute affecting the members of this Indian tribe in their relations with each other, and that it has not done so. In the case of *U. S.* v. *Kagama, supra,* the supreme court said of Indians occupying such relations as these Indians: "They owe no allegiance to the state, and receive from them no protection." I do not say that when an Indian commits a crime against a white man within the state, and off of a reservation, he cannot be punished by the laws of the state where the offense was committed, but the state cannot regulate in any manner the social relations of the members of an organized Indian tribe among themselves. There was then no law of Montana touching this crime at the time the Flathead Indian reservation was ceded, if ever, to the United States. I hardly think that the

agreement by which the United States retained jurisdiction over the Flathead Indian reservation can be called a ceding to the United States of the same. Eor these reasons I find that the defendant committed no crime for which this court can enter a judgment punishing him. As the government of the United States has undertaken to control Indians by laws, and has left them no longer to be controlled by their tribal rules and regulations, it is to be regretted that an adequate and proper code of laws to this end has not been enacted by congress. This attempt to adopt territorial and state laws may be classed as indolent legislation, not well adapted to producing order upon Indian reservations, or in those places under the exclusive jurisdiction of the general government, and allowing men guilty of crimes, demanding in all civilized governments punishment, as in this case, to escape their just deserts. The motion in arrest of judgment is sustained, and the defendant discharged from custody.