UNITED STATES of America,
Plaintiff-Appellee,

v.

Patrick Ralph RIZZO a/k/a Alfred Dale
Rosenheck, Defendant-Appellant.

No. 16724.

United States Court of Appeals
Seventh Circuit.

March 21, 1969.

Tully M. Friedman, Chicago, Ill., for appellant.

Alfred W. Moellering, U. S. Atty., Joseph F. Eichhorn, Asst. U. S. Atty., Fort Wayne, Ind., for appellee.

Before SWYGERT, FAIRCHILD and CUMMINGS, Circuit Judges.

FAIRCHILD, Circuit Judge.

Patrick Rizzo was convicted of the offense defined by 18 U.S.C. sec. 2113 (d), robbery of a federally insured bank, aggravated by assaulting the teller, Vera Martin, or putting her life in jeopardy by the use of a dangerous weapon. On appeal he argues (1) that the district judge failed to make sufficient inquiry whether the jurors had heard a prejudicial radio broadcast, (2) that the evidence does not support a finding either of an assault on Mrs. Martin or that her life was placed in jeopardy, and (3) that the instructions defining assault were erroneous.

(1) *Prejudicial publicity.* At the close of the first day of trial, Judge Eschbach instructed the jurors not to discuss the case, and not to permit themselves "to read, or hear, or see any information from any source pertaining to this case." The jury separated. At 7:30 and 8:00 the next morning a local radio station broadcast a story which mentioned a confession made by Rizzo, which the court had suppressed. Defense counsel moved for a mistrial.

When the jury assembled, Judge Eschbach referred to the instruction given the afternoon before, and asked whether any jurors permitted themselves to violate that instruction. There was no show of hands. He then said he would inquire about one or more news broadcasts which may have been on a local station the night before and that morning concerning events in the case. He asked whether any juror permitted himself to listen to the content of such broadcast at any time. Again no one responded. The motion for mistrial was denied.

Defendant argues that the negative responses to questions addressed to the jurors in each other's presence were an insufficient basis for determination that none had heard the broadcast, and that

it was incumbent on the trial judge to question each juror privately.

■ In this circuit, however, such negative responses are deemed adequate, and "if no juror indicates, upon inquiry made to the jury collectively, that he has read or heard any of the publicity in question, the judge is not required to proceed further." [1]

Defendant suggests no special circumstances in this case requiring a different procedure.

(2) *Sufficiency of the evidence of assault and putting life in jeopardy.* Mrs. Martin testified that a man, identified by other witnesses as Rizzo, came to her window, and after a preliminary remark said " 'This is a holdup.' And he threw the bag on the counter. I said, 'Are you kidding?' He said, 'No, I am not kidding,' and pulled a gun and fired it. I said, 'Hell, take it all,' and started to throw everything, the money out of the cage; and that was it." When asked what she did after the man ran out, she said "Well, I just stood back and shook." "Yes, I was [pretty excited]; it was unbelievable." Other witnesses corroborated her testimony about virtually throwing the money after the shot was fired, and there was testimony that the bullet passed over Mrs. Martin's left shoulder, out through the window, and struck the building across the street.

On cross-examination, she answered that she didn't think the gun was pointed at her; that the shot went off at the same time she saw the gun; that she didn't know whether the man meant to fire the gun; that she had said to others she didn't think he meant to shoot her; and "I just think he probably meant to scare me."

The statute reads in the alternative, either "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device." Rizzo was charged with assaulting Mrs. Martin *and* putting her life in jeopardy. The court instructed that either would fulfill that element of the offense.

■■ It was within the province of the jury to interpret the testimony, and we have no difficulty concluding that from the evidence the jury could properly find, beyond a reasonable doubt, that defendant assaulted Mrs. Martin, or put her life in jeopardy by the use of the weapon, or both. Counsel seems to suggest that her answers on cross-examination establish either that she had no fear or no reason to fear that she would be shot. Those answers were probably a reconstruction by hindsight, and her actions at the time established her fear.

Judge Eschbach heard and saw the witnesses. We note that in thanking the jurors for their service he said, "Your verdict is correct, and it is supported overwhelmingly by the evidence. There is no question of it."

(3) *The instruction on assault.* No challenge is made to the court's instruction that "To 'put in jeopardy the life' of a person by means of a dangerous weapon or device means to expose such person to a risk of death by the use of a dangerous weapon or device."

There can be little question but that Mrs. Martin was exposed to the risk of death when the gun was fired, and it may be a sufficient answer to defendant that if the jury so found, it would be immaterial whether the instruction defining assault was correct. Defendant argues, however, that the jury may have based the verdict on a finding of assault, without finding that her life was put in jeopardy, and that if the definition of assault was too favorable to the government, it may have been prejudicial.

■ The court's definition of assault was:

"Any willful attempt or threat to inflict injury upon the person of another, when coupled with an apparent present ability to do so, and an intentional display of force such as would give the victim reason to fear or expect immediate bodily harm, constitutes an assault. An assault may be committed without actually touching, or striking,

1. Margoles v. United States, (7th Cir. March 4, 1969), 407 F.2d 727, p. 735.

or doing bodily harm to the person of another.

"So, a person who has the apparent present ability to inflict bodily harm or injury upon another person, and willfully attempts or even threatens to inflict such bodily harm, as by intentionally flourishing or pointing a pistol or gun at another person, may be found to have assaulted such person." [2]

Defendant makes separate objections to the two paragraphs just quoted. His objection to the second paragraph is similar to one which his trial counsel made before the jury retired. The record does not show, however, an objection to the first paragraph, as Rule 30, F.R.Crim.P. requires in order to challenge it here as a matter of right.

Even if the objection had been preserved we conclude that there was no prejudicial error if error at all.

Defendant's objection to the first paragraph is that it did not explicitly require that Mrs. Martin be found to have had actual fear or expectation (apprehension) of immediate bodily harm, but only that she was given reason to fear or expect such harm.

■ The first paragraph intermingles two criminal law concepts of assault. One concept is that an assault is an attempt to commit a battery.[3] There may be an attempt to commit a battery, and hence an assault, under circumstances where the intended victim is unaware of danger. Apprehension on the part of the victim is not an essential element of that type of assault.[4] But it is doubtful, under the evidence in this case, that the jury found that Rizzo attempted to wound Mrs. Martin, when he shot the gun.

The second concept is that an assault is "committed merely by putting another in apprehension of harm whether or not the actor actually intends to inflict or is incapable of inflicting that harm." [5] The concept is thought to have been assimilated into the criminal law from the law of torts.[6] It is usually required that the apprehension of harm be a reasonable one.[7]

The paragraph under consideration required all the elements within the second concept except that it did not explicitly require the jury to find that Mrs. Martin, in addition to having reason to fear or expect immediate bodily harm, actually feared or expected it. Such omission could be prejudicial only if there were some reasonable possibility, under the evidence, that the jury could have found that Rizzo threatened Mrs. Martin with bodily injury, and that his intentional activity with the gun gave her reason to fear or expect immediate bodily harm, but that, somehow, she did not really fear or expect such harm.

Perhaps there would be an academic improvement in the instruction if it were phrased so as specifically to require actual apprehension by the victim, but we are unable to conclude that the omission was prejudicial to defendant in the light of the evidence in this case.

■ Defendant's objection to the second paragraph of the challenged instruction appears to be that it suggests that Rizzo "pointed" a gun at Mrs. Martin, when she testified she didn't think it

---

2. These paragraphs are taken verbatim from Mathes and Devitt, Federal Jury Practice and Instructions, sec. 43.07, "To 'Assault' a person—Defined."

3. Burdick, Law of Crime (1946), sec. 338; Perkins, Criminal Law (1957), p. 86; Clark and Marshall, Crimes, 4th ed. (1940), sec. 192.

4. Commonwealth v. Slaney (1962), 345 Mass. 135, 185 N.E.2d 919, 923; Nelson v. State (Fla.App.1963), 157 So.2d 96,

98; Burdick, op. cit., sec. 339; Perkins, op. cit., p. 88.

5. Ladner v. United States (1958), 358 U.S. 169, 177, 79 S.Ct. 209, 213, 3 L.Ed.2d 199, 205.

6. Perkins, op. cit., p. 86–88.

7. Clark and Marshall, op. cit., sec. 195; Burdick, op. cit., sec. 342; Perkins, op. cit., p. 86.

was "pointed" at her and that a mere pointing or flourishing of a gun could be found to be an assault, without more. We find no error in either respect. The gun was pointed at her sufficiently that the bullet passed over her shoulder. This paragraph must be read in context with the preceding paragraph, and when so read, it is not misleading.

Mr. Tully Friedman, a member of the Illinois bar, was appointed by this court to represent Mr. Rizzo on appeal. The court expresses its thanks to Mr. Friedman for his able and zealous efforts.

The judgment is affirmed.