**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James GHOLSTON, Jr., Defendant-Appellant.**

**No. 20329.**

United States Court of Appeals, Sixth Circuit.

Jan. 6, 1971.

George E. Lee, Detroit, Mich., for defendant-appellant.

Frederick S. Van Tiem, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee; James H. Brickley, U. S. Atty., Detroit, Mich., on brief.

Before CELEBREZZE, PECK and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

This appeal is from the United States District Court for the Eastern District of Michigan, Southern Division. Appellant was convicted by a jury of armed robberies of two branches of federally-insured banks in the vicinity of Detroit, Michigan. 18 U.S.C. § 2113(a) and (d) (1964). The principal issue on appeal is whether the District Court committed error in excluding testimony of the Appellant's defense counsel to the effect that he was present at a pre-trial line-up

where Appellant was positively identified by four eyewitnesses to the robberies, but that other persons present at the line-up did not positively identify Appellant.

The Government established the Appellant's guilt by overwhelming evidence: five eyewitnesses, two employees of one bank branch and three of the other, positively identified a photograph of the Appellant out of a stack of six photographs of six persons that was shown to them during the preliminary police investigation of the case; four of the five subsequently positively identified Appellant in a line-up of six individuals, the fifth eyewitness giving a "possible but not positive" identification; each of the five eyewitnesses made an in court identification of Appellant. A sixth witness called by the Government testified that he did not have an opportunity to notice the facial features of the robber before he was forced to lie, face down, on the floor.

Appellant was not called to testify, and presented no direct proof. The record reveals that the theory of the defense initially was to attack the police procedures employed in the process of adducing the eyewitness identifications, see, Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); then, the first device failing, attempting, before the jury, to impeach the testimony of the five eyewitnesses who positively identified the Appellant as the robber.

Upon an intensive study of the entire transcript of testimony before the District Court, including an exhaustive in camera, voir dire examination by the Court and counsel of all eyewitnesses who were called to testify, we find no evidence that at any stage of the police investigation the Appellant was "suggested," either directly or indirectly to any of the witnesses as the one who committed the act. There is no evidence that the Appellant's features differed, in a significant way, from the physical characteristics of other persons whose photographs were shown to the witness-

es, or from the other five persons who appeared in the police line-up with him. Nor is there evidence that the timing between the showing of the photographs and the line-up, or between the line-up and the positive identifications in court "impermissibly suggested" to the witnesses that the Appellant was the robber.

On the contrary, although approximately one year elapsed between the time of the robberies and the time the identifications were made, and although the Appellant's features were partially concealed in each of the robberies, once with charcoal or some other black substance, and once with a "whitish" substance, each of the five eyewitnesses testified that enough of the Appellant's physical features were visible so that he or she was absolutely positive of the identification made.

■ Upon review of the record in its entirety, we are unable to find anything to substantiate the Appellant's argument that the police procedures used were "impermissibly suggestive" of the Appellant, and we hold that the credibility of the identifications made by the eyewitnesses was properly placed, as a question of fact, before the jury, whose judgment was supported by sufficient, indeed overwhelming, evidence. *See* Simmons v. United States, 390 U.S. 377, 382–383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

The Appellant's third witness was one of his attorneys, who withdrew as counsel immediately preceding his offer of testimony, who had been present at the police line-up where the Appellant was identified. *See* United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). He offered testimony to the effect that although five eyewitnesses identified the Appellant at the line-up, other persons present at the line-up did not identify the Appellant. Upon objection, the District Court ordered this testimony excluded. The Government argues that testimony to the effect that certain witnesses at the line-up stated that they did not recognize the

Appellant is inadmissible hearsay testimony; the Appellant argues that such testimony would not be offered to prove the truth or falsity of the non-identifying witnesses' out-of-court statements, but rather solely for the purpose of impeaching the credibility of the identifying witnesses' testimony. Thus, he argues, it would not be hearsay. Furthermore, the Appellant argues that United States v. Wade, *supra,* which requires presence of counsel at pre-trial line-ups, by implication requires that a lawyer who was present be permitted to testify that some persons who were called to identify his client did not, for whatever reason, do so.

■ Appellant's offer of testimony was no more than this: whereas five persons identified the Appellant at the line-up, other spectators called there by the police did not. Regardless of hearsay, this assertion is inadmissible on grounds of irrelevance and incompetency. Counsel's mere assertion that a spectator did not identify the Appellant is irrelevant unless counsel can lay a foundation by showing that the spectator should have been able to identify the robber by virtue of his powers of observation, his position at the time of the robbery, his visual acuity, etc. These matters being exclusively within the knowledge of the spectator, Appellant's counsel could not testify to them without running afoul of the hearsay rule. Such testimony is also highly prejudicial insofar as it leads the jury to the impermissible inference that the spectators would have been able to identify the robber, but could not identify the Appellant, and that, therefore, the Appellant was not guilty.

■ The Appellant proposes that whatever prejudice would flow from his attorney's testimony could be overcome by requiring the Government to produce, at trial, all persons who were called to a line-up to identify a suspect, regardless of whether they were witnesses to the crime he was being tried for or not, and regardless of whether or not they identified the defendant. Without consider-

ing the potential effect of such a proposal on police and judicial procedures, we think the duty of the Government to prosecute fairly does not extend so far. Absent concealment of witnesses, or deception, neither of which is even suggested in this case, the Government must be free "to select and choose those witnesses it prefers to use in making out its case." United States v. Levi, 405 F.2d 380, 381 (4th Cir. 1968). We do not think a defendant's burden of producing his own witnesses and presenting his own case can or should be so radically shifted onto the Government.

The Appellant had free access to all persons who were called to appear at the line-up. If there were witnesses who had an opportunity to witness the crime but were unable to identify the Appellant at the pre-trial line-up, the Appellant was free to produce them. He did not do so.

United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), indicates that the role of counsel at a line-up is a limited one. As a trained observer he may, of course, suggest improvements in the line-up procedure to the police. Under certain circumstances, counsel's testimony may be relevant at the trial of his client. The District Court in the instant case recognized this and properly permitted the Appellant's attorney to testify on the issue whether the police procedures used at the line-up were "impermissibly suggestive." However, *Wade* contemplates that the lawyer's principal function is to witness the line-up so that the entire proceeding may be reconstructed by him during cross-examination at trial, in order to diminish the weight given by the jury to eye-witness testimony. United States v. Wade, *supra,* 388 U.S. at 324–327, 87 S. Ct. 1926, 18 L.Ed.2d 1149.

Upon review of the entire record, we are of the opinion that the judicial and police procedures leading to the conviction of the Appellant were models of fairness and provided the Appellant with procedural due process. We have reviewed the Appellant's other allegations of error and find them to be without foundation in fact, and not to merit further discussion.

The judgment of the District Court is affirmed.

McCREE, Circuit Judge (concurring).

I concur in the result of the court on the facts of this case, but I disagree with the restriction the opinion places upon the trial role of counsel who observes a lineup identification procedure. I would hold that counsel present at a lineup may testify to any departure from essential fairness which he may have observed in the conduct of the lineup and to any other aspects of that procedure which bear upon the probative value to be accorded the in-court identification of the defendant by persons who observed the lineup, including the failure by other witnesses to the crime to identify the defendant at the lineup. *Cf.* United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

In this case, counsel sought to testify that there were present at the lineup persons, not subsequently called as witnesses, who did not identify defendant. If this offer of proof had included a showing that these persons had been in a position at the situs of the crime to have observed the perpetrators, I would regard its exclusion as error. However, there was no such offer, and it appears that Gholston was also suspected of two other crimes. The persons who did not identify him at the lineup were not necessarily concerned with the crime for which Gholston was convicted. The apparent refusal by the police officers conducting the lineup to allow defense counsel to talk to witnesses at the police station may have contributed to the fact that the offer of proof did not include this information. Such restrictions upon counsel at lineups should receive this court's careful scrutiny and on a clearer record might require a different result. On this record, however, I cannot conclude that the exclusion of the attorney's testimony was prejudicially erroneous.