**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Millard Robert BEASLEY, Defendant-**
**Appellant.**

**No. 20029.**

United States Court of Appeals,
Sixth Circuit.

Feb. 12, 1971.

McCree, Circuit Judge, concurred in part and dissented in part and filed opinion.

Nick Avern (deceased) and Richard Schneider, Detroit, Mich., on brief for defendant-appellant.

James H. Brickley, U. S. Atty., Richard L. Delonis, Asst. U. S. Atty., Detroit, Mich., on brief for plaintiff-appellee.

Before EDWARDS, CELEBREZZE, and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

Millard Robert Beasley appeals from a conviction of attempted robbery of the Michigan Bank, a federally insured institution, aggravated by an assault on the bank's head teller. 18 U.S.C. § 2113(d). The indictment under which he was tried contained two counts, the one for which he was convicted, and one specifying unaggravated robbery arising out of the same transaction, 18 U.S. C. § 2113(a). In view of the Appellant's conviction under section 2113(d), and his receipt of the maximum penalty, 25 years, no disposition was made by the District Court of the offense charged in the count specifying the violation of section 2113(a), which carries a maximum penalty of 20 years. The Appellant waived trial by jury.

The following facts were found by the District Court. On September 21, 1957, a lone bandit drove up to a drive-in teller's window at the Michigan Bank. The window was being attended by the head teller of the branch, Mrs. Stylas, who was filling in at the drive-in window for the regular teller, who was on a break. When Mrs. Stylas extended the moveable drawer, with which the window was equipped, to the window of the car, the car's occupant placed a zippered leather shaving kit into the drawer, along with a written message. Upon retraction of the drawer, Mrs. Stylas placed the note aside, and opened the bag, which contained a cylindrical container (later identified as a soft drink can) with a flashbulb cube wired to its top. At this point, the bandit stated, "Put your money in the bag." Mrs. Stylas then glanced down at the written message which stated, "This is a holdup. This is a bomb. You won't be hurt." When the bandit again demanded money, Mrs. Stylas responded that she did not have any in her drawer. At this point, the thief, according to Mrs. Stylas

"pointed to another type flashbulb cube, whether it was mounted on anything or just in his hand, I don't really know. I remember seeing it just above the window. He told me that he could blow this bomb up right through my window, right through the glass. He said, 'I'll blow this bank to bits.' He told me again to put my money in the bag. I told him I didn't have any money. I told him my money is over there and I pointed to my right because that was the window I was working out of at that time. At this point he told me to go get my money. I said I would. I didn't go to my window. There was another teller who was at the back counter and I walked over to her and I told her, 'Sharon, sound the alarm.' She looked at me kind of funny and she looked at my inside [regular] window and she saw I didn't have a customer and I told she again, 'Sharon go press the alarm.' I said, 'there's a man at the drive-in window trying to hold me up.'"

Mrs. Stylas and the other teller then stood back and waited, presumably for the police to arrive. After some time had passed, the holdup man drove away. Then, according to Mrs. Stylas,

"[t]he man had already left and everybody went outside the building because they were afraid the thing was

a bomb and we were all standing outside and finally I asked Sharon, are you sure you pressed the alarm and she said, yes. I said something must be wrong because the police should be here by now. So, I proceeded to go back in the bank and there's a desk right by the door and I picked up the phone and I dialed our operator and told her that I had a man that attempted to hold me up at the bank and there is a note here stating that this is a bomb, whether it is or not, I have no idea."

Later, the Appellant was identified as the holdup man by his latent palm print, which was discovered on the note he passed into the teller's window, and by the stylized lettering of the note, which could have been stenciled with a lettering guide ruler to which the Appellant had access. This evidence was sufficient to establish his identity beyond a reasonable doubt.

The Appellant took the stand at trial and testified that he could not have committed the crime, first, because at the time the crime was committed he was at lunch with a friend, who died before the Appellant's case came to trial; second, because during his lifelong career in crime, comprising many arrests and convictions of several robberies, he had never used this particular modus operandi before. The District Court was unconvinced by the Appellant's defense, and entered judgment against him under 18 U.S.C. § 2113(d).

■ The Appellant raises a spate of issues on appeal, all but one of which lack sufficient merit to warrant extended discussion. First, the Appellant maintains that his palm prints were taken by the police in violation of his constitutional rights. This argument is without substance. The record reveals that the Appellant, possessed of a college-level education and worldly in affairs of criminal procedure, voluntarily turned himself in to the federal authorities for the purpose of an informal interview, voluntarily executed waivers of his constitutional rights, and willingly submitted to having his finger and palm prints taken by the federal agents. Moreover, the Appellant's *Miranda* warnings were properly administered, and he was told by the agents that he was free to leave the interview at any time.

■■ Second, the Appellant contends that the Government's failure to call the laboratory technician who processed the Appellant's latent palm print from the holdup note violated his Sixth Amendment right to confront and cross-examine his accusers. The technician who processed the prints was shown, by the Government, to have left the service of the police and to have been unavailable for trial, notwithstanding extensive efforts to locate him at his last known address. In his absence, the print was authenticated by Officer Yakush, chief of the scientific bureau, who was present when the latent prints were "brought out" on the holdup note. He testified that the test is a mechanical, routine one, and that it was properly performed in the instant case. As an eyewitness to it, the officer was as competent to testify to its accuracy, and to authenticate the prints, as the technician would have been. Having thus produced one competent, reliable witness to authenticate the prints, the Government was under no obligation to call others, so long as their identities were not withheld or suppressed from the Appellant. United States v. Gholston, 437 F.2d 260 (6th Cir. 1971). Furthermore, there could have been nothing accusatorial in the technician's testimony that he properly performed the mechanical test of "bringing out" the latent prints on the note paper; therefore he was not a witness "against" the Appellant, and the Sixth Amendment guarantee of confrontation and cross examination does not apply. On the other hand, the fingerprint expert who matched the laboratory's print with those of the Appellant was a witness "against" the Appellant, and he, properly, was presented at trial and cross-examined.

Totally without substance are the Appellant's contentions that: the Government did not grant him access to all relevant evidence during discovery; the identification evidence was insufficient to support his conviction; the District Court erred in not requiring the "bomb" to be introduced; the District Court was unfair and biased.

The remaining issue on appeal concerns the sufficiency of the evidence to support the District Court's finding that the robbery was aggravated by an assault on Mrs. Stylas, justifying the judgment under section 2113(d), which carries a penalty five years greater than unaggravated robbery, 18 U.S.C. § 2113(a). The Appellant argues that since the "bomb" he passed into the teller's window was, in fact, incapable of producing harm, and that since the District Court made no finding that Mrs. Stylas was placed "in fear" by it, the evidence is insufficient to support the lower court's finding of an "assault." We disagree.

The relevant statutory provisions state:

"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; * * * Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

"(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

■ It has been well established that subsection (d) is to be read disjunctively, being violated either by an "assault," or by putting life in jeopardy with a dangerous weapon. Gant v. United States, 161 F.2d 793 (3d Cir. 1947); United States v. Murray, 149 F.2d 932 (5th Cir. 1945). The term "assault" is nowhere defined in the statute or in its legislative history, see generally, Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), and the elements of the offense have not been elaborated either by the Supreme Court or by the lower federal courts.

Insofar as the base provision, section 2113(a), specifies the use of "force," "violence," or "intimidation," something more must be required to prove robbery aggravated by assault. We believe that those additional elements are present where, as here, the robber is shown to have possessed the intent to generate apprehension on the part of his victim, and where the victim, in fact, is shown to have been placed in reasonable apprehension by the robber's conduct, regardless of the robber's ability actually to inflict harm. See United States v. Rizzo, 409 F.2d 400, 403 (7th Cir. 1969); Baker v. United States, 412 F.2d 1069, 1071–1072 (5th Cir. 1969).

■ The Appellant maintains that the Government cannot succeed on appeal because Mrs. Stylas never testified, and the District Court did not find that she was actually placed in fear. It is our belief that Congress did not intend that the Government's case, under section 2113(d) depend upon its ability to probe and amplify the subjective emotional reactions of robbery victims confronted with potentially and apparently dangerous weapons. Apprehension is not synonymous with fear: a defendant against whom the requisite elements of the offense have been proved will not be absolved on the fortuity that his victim was too courageous or insensitive to be afraid. Thus, where a defendant is shown (a) to have created an apparently dangerous situation, (b) intended to intimidate his victim to a degree greater than the mere use of language, (c) which does, in fact, place his victim in reasonable expectation of death or seri-

ous bodily injury, the requirements of section 2113(d) are satisfied.

█ We find that the requisite elements of the offense are present on the record before us. The Appellant placed the device in the teller's window, warned that it was a bomb, and threatened that he would blow up the bank. His victim's apprehension was evidenced by the fact that she immediately and repeatedly urged another teller to contact the police. The fact that all the other employees of the bank evacuated the building in fear of the device indicates that Mrs. Stylas's expectation of harm was reasonable under the circumstances.

Finally, even though inert, this device put life in danger as surely as a live weapon could. 18 U.S.C. § 2113(d). The threat to use any apparently deadly device is far more likely to lead to retaliation by deadly force, either by the victim, by rescuers, by the police, and, in return, by the robber, then assaultive language. Since a plausible threat to use such a device amplifies the danger to human life, and results in a more facile taking of property than mere assaultive language, it is appropriate that it be attended by a sterner penalty than simple, unaggravated bank robbery.

The judgment of the District Court is affirmed.

McCREE, Circuit Judge (concurring in part and dissenting in part).

I believe that the majority opinion has correctly resolved all but the final issue it discusses. However, in discussing appellant's second contention, I would not characterize the missing laboratory technician's function as involving the performance of a test. If he had performed a test the issues of which were relevant, it would have been error not to have required him to testify because the test results would constitute an assertion, verbal or otherwise, about a matter material in the litigation and evidence thereof would be hearsay. Nevertheless, it is clear that all the technician did was to apply a silver nitrate solution to the demand note to make patent the latent print. This was not an assertive act and as the majority opinion observes, it was only a routine task which was observed by another officer who testified at the trial to what he saw. The critical testimony that appellant's palm print matched that on the note was provided by an expert fingerprint examiner who was present at the trial and was thoroughly cross-examined by appellant's counsel.

I believe the majority opinion is in error in its resolution of the final issue whether the record supports the finding that Beasley violated 18 U.S.C. § 2113(d). That section reads as follows:

Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

This language clearly requires the commission of something more than the elements of the offense described in § 2113(a). Subsection (a) punishes an attempt to take "from the person or presence of another any * * * thing of value * * * in the * * * custody * * * of any bank * * *" when that taking is done "by force and violence, or by intimidation." Force and violence is the traditional language of assault, and something more than an assault must be present to authorize the additional five year penalty under § 2113(d).

I would hold that the aggravation required by the "assault" provision of § 2113(d) must be committed "by the use of a dangerous weapon or device" just as a dangerous weapon must be employed in the alternative aggravating circumstance of putting in jeopardy the life of any person.

Although there is no controlling authority in our circuit on this issue (which, for all that appears, has never

been squarely considered by any circuit), the Supreme Court in Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), stated that conviction of "robbery aggravated by assault with a deadly weapon" subjects one to the maximum of 25 years provided in 18 U.S.C. § 2113(d). 352 U.S. at 329 n. 11 & 327 n. 6, 77 S.Ct. 403. *See also* United States v. Johnson, 401 F.2d 746, 747 (2d Cir. 1968); Holbrook v. Hunter, 149 F.2d 230, 231 (10th Cir. 1945); Meyers v. United States, 116 F.2d 601, 603 (5th Cir. 1941); United States v. Gebhart, 90 F.Supp. 509, 514 (D.Neb.1950).

If the assault involved in a violation of § 2113(a) could, at the whim of a prosecutor, also be made the aggravating element under § 2113(d) to authorize 5 years additional imprisonment, the principle of Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), would be offended. In order to give lawful meaning to Congress' enactment of the aggravating elements in 18 U.S.C. § 2113(d), the phrase "by the use of a dangerous weapon or device" must be read, regardless of punctuation, as modifying both the assault provision and the putting in jeopardy provision. *See* United States v. Shreveport Grain & El. Co., 287 U.S. 77, 82–83, 53 S.Ct. 42, 77 L.Ed. 175 (1932); Egyptian Supply Co. v. Boyd, 117 F.2d 608, 611–612 (6th Cir. 1941).

Under this construction of the statute, the 25 year sentence cannot stand because it is clear that the indictment did not charge nor did the proofs show the use of a dangerous weapon or device.

Nevertheless, even if an unarmed assault should be deemed to satisfy § 2113(d), the aggravating factor is absent here. Criminal assault is not defined anywhere in the Federal Criminal Code and, in the absence of a statutory definition, we are referred to common law definitions. *See* Working Papers of the National Commission on Reform of Federal Criminal Laws, Vol. 2, page 833 (July 1970); Guarro v. United States, 99 U.S.App.D.C. 97, 237 F.2d 578 (1956).

In the common law, the concept of criminal assault, according to one line of authority, has been understood to require two elements: a wilful attempt or threat to inflict injury upon someone and the ability to do so. United States v. Barnaby, 51 F. 20, 21 (C.C.D.Mont. 1892); 6 Am.Jur.2d, Assault and Battery §§ 2–3. The tort concept of assault requires a wilful attempt or threat to inflict injury but is satisfied if only the apparent ability to accomplish it is present. Nevertheless, this concept requires the actual apprehension of danger by the victim, although the apprehension need not be reasonable. Restatement (Second) of Torts § 27 (1965). A second concept of criminal assault has borrowed from the law of torts and involves intent by the actor and apprehension on the part of the victim as in the tort concept, and additionally requires that the apprehension be reasonable. It does not require that the actor actually be capable of inflicting harm. *Cf.* United States v. Rizzo, 409 F.2d 400, 403 (7th Cir. 1969); 2 E. Devitt & C. Blackmar, Federal Jury Practice Instructions § 48.-07 (2d ed. 1970).

None of these definitions of assault has been fully satisfied here. It is not contended that the beverage can with the attached flashcube could have inflicted harm or that the accused actually intended to inflict harm, and the trial judge made no express finding that the teller named in the indictment actually apprehended danger.[1] Although the record might support a finding of apprehension on her part, the trial judge

---

1. The court stated in its findings that, "He did assault Eleanor Stylas by handing her what he contended was a bomb, whether it was a bomb or not, is immaterial if he presented it as a bomb, and if she had reason to believe it might be, that is sufficient to find he did commit an assault and, therefore, the court finds that the defendant is guilty of Count II of the indictment". Transcript at 241.

refrained from making it and we can only speculate whether he would have done so.[2]

Accordingly, I would hold, regardless of which definition of assault is embodied in § 2113(d), that the prosecutor has failed to prove Count II of the indictment.

Of course the comment in the majority opinion that life may have been placed in danger because of possible invited deadly retaliation is inapposite since no dangerous weapon was used as § 2113(d) plainly requires under that aggravating alternative. And, of course, this was not the aggravating element charged in the indictment.

Nevertheless, the record supports the determination of guilt under the first count and instead of ordering a new trial I would vacate the sentence of 25 years and remand for resentencing under § 2113(a) for violation of which a sentence may not exceed 20 years. This result is indicated because the offense defined in the first count is included in the second count and the trial judge's findings clearly establish all the elements of § 2113(a). *See* Gant v. United States, 161 F.2d 793 (5th Cir. 1947); Nolen v. United States, 190 F.2d 418 (6th Cir. 1951); Schmidt v. United States, 286 F.2d 11 (5th Cir. 1961); Gant v. United States, 308 F.2d 728 (5th Cir. 1962).

2. Mrs. Stylas, the teller named in the indictment, testified on direct examination as follows:

Q (By Mr. McIntyre, continuing): Mrs. Stylas, did you know whether or not it was a bomb?

A I had no way of knowing, no.

Q Did the thought cross your mind?

A Well, to be honest, the way it looked, I couldn't figure out what it was.

Transcript at 23. Her testimony on cross-examination is no more helpful:

Q (By Mr. Arvan, continuing): Do you know who did [ring the alarm buzzer]?

A The man had already left and everybody went outside the building because they were afraid the thing was a bomb and we were all standing outside and finally I asked Sharon, are you sure you pressed the alarm and she said, yes. I said something must be wrong because the police should be here by now. So, I proceeded to go back in the bank and there's a desk right by the door and picked up the phone and I dialed our operator and told her that I had a man that attempted to hold me up at the bank and there is a note here stating that this is a bomb, whether it is or not, I have no idea.

Transcript at 41–42. The indictment did not alleged that anyone other than Mrs. Stylas had been assaulted.