UNITED STATES of America, Plaintiff-Appellee,

v.

Melvin William MOORE, Defendant-Appellant.

No. 73–1311.

United States Court of Appeals, Tenth Circuit.

Nov. 8, 1973.

---

A. H. Hitchcock, Denver, Colo., for defendant-appellant.

James M. Peters, Asst. U. S. Atty. (William R. Burkett, U. S. Atty., Oklahoma City, Okl., on the brief), for plaintiff-appellee.

Before PHILLIPS, HILL and DOYLE, Circuit Judges.

HILL, Circuit Judge.

Following a jury trial, appellant Moore was convicted of bank robbery in violation of 18 U.S.C. § 2113(a) and (d).[1] Following the verdict, appellant moved for a new trial. The motion was denied, and he was subsequently sentenced to twenty-five years imprison-ment. From the judgment and sentence of the trial court Moore now appeals.

The testimony established that about 10:00 a. m. on October 19, 1972, a man entered the First National Bank of Alex, Oklahoma, approached a teller window and pulled a gun. Thereupon he ordered the bank employees present, as well as the other employees and a customer who arrived during the robbery, to enter the vault, to lie on their stomachs and to place their hands behind their backs. The robber then instructed James Allen, one of the bank's personnel, to tie the others' hands and to fill a sack with the money in the vault as well as the money in the tellers' drawers. When this had been completed, the robber returned Allen to the vault and tied his hands; he then proceeded to leave the bank and make his escape. The employees freed themselves almost immediately and observed the robber leaving the parking lot of the bank in what was later found to have been a stolen automobile.

Additional testimony, from a motorcycle shop owner, indicated that he observed Moore and another defendant, Anderson, in his shop in early November. At that time Anderson asked Moore to give him his money, and Moore subsequently removed a number of bills from his pocket; the witness did not remain long enough to see if Moore delivered the money to Anderson. Still in early November, the two defendants were stopped by a Bethany, Oklahoma, police officer for a routine traffic investigation. When it was discovered that Anderson was operating his vehicle with a suspended license, he was arrested and it was later discovered he had in his possession a revolver and a number of

1. 18 U.S.C. § 2113(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, . . .

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

new paper bills. A check of the serial numbers on these bills showed that they were part of the money stolen from the bank on October 19.

At the trial, four of the bank employees positively identified Moore as the man who had robbed the bank. From these identifications and Moore's later connection with portions of the stolen money, the jury convicted him of the robbery.

█ Appellant urges two grounds for reversal of the judgment in this case. He first asserts that the trial court should have dismissed the indictment for failure of the government to produce evidence that the life of anyone was placed in jeopardy during the commission of the robbery. In particular, the indictment charged as to 18 U.S.C. § 2113(d) that Moore placed the life of Allen in jeopardy through the use of a dangerous instrumentality, *i. e.*, a pistol. The testimony indicated that the defendant used a pistol during the robbery; that he pointed it at several bank employees, including Allen, and issued commands to those employees; that he either held it in his hand or kept it near during the entire crime. Though appellant does not raise the issue, since no evidence was produced that the gun was not loaded, the jury was free to infer that it was. Lewis v. United States, 365 F.2d 672 (10th Cir. 1966). This testimony is sufficient to uphold the jury verdict in this case, and it would have been error for the trial court to have removed this issue from the jury's consideration on the grounds asserted here. In the recent case of United States v. Marx, 485 F.2d 1179 (10th Cir. 1973), we approved the language used by the Sixth Circuit in United States v. Beasley, 438 F.2d 1279 (6th Cir. 1971), to define jeopardy as required in this statute. In *Beasley* the court indicated that the requirements of § 2113(d) are satisfied when the defendant is shown:

(a) to have created an apparently dangerous situation, (b) intended to intimidate his victim to a greater degree than the mere use of language,

(c) which, does in fact, place his victim in reasonable expectation of death or serious bodily injury.

The jury is entrusted with the obligation to determine facts. This issue was properly theirs, and the trial court was correct in its ruling.

Secondly, Moore contends that the failure of the trial court to inquire as to the facts surrounding earlier pre-trial photographic identifications requires that we remand this case to the trial court so that such an inquiry can be held. This argument is based upon the standard announced in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In that opinion, the Court recognized the dangers inherent in pretrial photographic identifications and yet stated it was unwilling to deny their employment in all cases. They thus concluded that such photographic identifications must be judged upon the totality of the surrounding circumstances. *Simmons* established that "each case must be considered on its own facts, and that convictions based upon eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

█ It should first be noted that this issue is raised for the first time here on appeal. No motion to suppress or objection to the evidence was made at the trial level. We have previously expressed our hesitancy to review such claims raised only at the appeal stage. Haskins v. United States, 433 F.2d 836 (10th Cir. 1970). However, as we pointed out in *Haskins*, Rule 52(b), F.R.Crim.P., 18 U.S.C., requires that we exercise our judgment whether to notice "plain errors or defects affecting substantial rights." In light of the conclusive weight of the evidence presented against the appellant at the trial and because no indication of prohibited procedures is present in regard to the photo-

graphic identifications, we do not believe this is an appropriate case for application of that rule.

From the evidence it appears that three of the witnesses who identified Moore during the trial had previously been allowed to view a "spread" of pictures and ask if they could identify any of the subjects as the bank robber. Each witness viewed the pictures alone and each viewed several pictures, possibly as many as seven. There was no testimony that any of the subjects was suggested as a suspect or that any other impermissible procedure was utilized. Each of the witnesses selected the appellant's picture as being of the person who robbed the bank, and each repeated that identification in court. Despite cross examination all of these witnesses expressed no doubt as to the fact that the appellant was in fact the person who robbed the bank.

In addition to the three challenged identifications, the government produced one eyewitness identification by a bank employee who did not view any pictures of the appellant. The government also connected the appellant with parts of the stolen funds subsequent to the robbery. This evidence, in conjunction with the complete lack of evidence as to violations of due process during the photographic identifications, requires that we affirm the trial court.

Further, the record provides an independent source [2] for the in-court identifications sufficient to prevent any substantial likelihood of misidentification. The witnesses testified that they each observed the appellant in a well lighted bank for periods of from three to ten minutes, and that this view was from a distance of about six feet or less. Appellant wore no mask though he was described as having a beard, moustache and long hair. These witnesses gave detailed descriptions of the appellant to the police, and these descriptions matched almost perfectly even to the clothing he wore at the time of the robbery. Each witness indicated his identification was based upon observations of the appellant at the time of the robbery and as he appeared in court. These descriptions, as well as the other factors mentioned above, destroy any likelihood of misidentification.

Affirmed.

---

2. Clemons v. United States, 408 F.2d 1230 (D.C.Cir.1968); Haskins v. United States, *supra*.