# SIMPSON ET AL. *v.* UNITED STATES

No. 76–5761.   Argued November 1, 1977—Decided February 28, 1978*

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, MARSHALL, BLACKMUN, POWELL, and STEVENS, JJ., joined. REHNQUIST, J., filed a dissenting opinion, *post,* p. 16.

---

*Together with No. 76–5796, *Simpson* v. *United States,* also on certiorari to the same court.

*Robert W. Willmott, Jr.*, by appointment of the Court, 432 U. S. 904, argued the cause and filed a brief for petitioners in both cases.

*H. Bartow Farr III* argued the cause for the United States in both cases. With him on the brief were *Acting Solicitor General Friedman, Assistant Attorney General Civiletti*, and *John J. Klein.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The punishment for bank robbery of a fine of not more than $5,000 and imprisonment for not more than 20 years, or both, 18 U. S. C. § 2113 (a), may be enhanced to a fine of not more than $10,000 and imprisonment for not more than 25 years, or both, when the robbery is committed "by the use of a dangerous weapon or device," 18 U. S. C. § 2113 (d).[1] Another statute, 18 U. S. C. § 924 (c), provides that whoever "uses a

---

[1] Title 18 U. S. C. §§ 2113 (a) and (d) provide:

"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

"Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

"Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

.          .          .          .          .

"(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

firearm to commit any felony for which he may be prosecuted in a court of the United States . . . shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years," and "[i]n the case of his second or subsequent conviction under this subsection," to imprisonment for not less than 2 nor more than 25 years; "nor shall the term of imprisonment imposed under this subsection run concurrently with any term of imprisonment imposed for the commission of such felony." [2] Petitioners were convicted of two separate bank robberies committed with firearms. The question for decision is whether §§ 2113 (d) and 924 (c) should be construed as intended by Congress to authorize, in the case of a bank robbery committed with firearms, not only the imposition of the increased penalty under § 2113 (d), but also the imposition of an additional consecutive penalty under § 924 (c).

I

On September 8, 1975, petitioners, using handguns to intimidate the bank's employees, robbed some $40,000 from the East End Branch of the Commercial Bank of Middlesboro,

---

[2] The complete text of 18 U. S. C. § 924 (c) provides:

"(c) Whoever—

"(1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States, or

"(2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States,

"shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to a term of imprisonment for not less than two nor more than twenty-five years and, notwithstanding any other provision of law, the court shall not suspend the sentence in the case of a second or subsequent conviction of such person or give him a probationary sentence, nor shall the term of imprisonment imposed under this subsection run concurrently with any term of imprisonment imposed for the commission of such felony."

Ky. App. 20. Less than two months later, on November 4, 1975, petitioners returned to Middlesboro and this time, again using handguns, robbed the West End Branch of the Commercial Bank of about the same amount.

Petitioners received a separate jury trial for each robbery. After the trial for the first robbery, they were convicted of both aggravated bank robbery, in violation of 18 U. S. C. §§ 2113 (a) and (d), and of using firearms to commit the robbery, in violation of 18 U. S. C. § 924 (c). They were sentenced to consecutive terms of 25 years' imprisonment on the robbery count and 10 years' imprisonment on the firearms count. After the trial for the second robbery, petitioners were again convicted of one count of aggravated bank robbery in violation of §§ 2113 (a) and (d) and of one count of using firearms to commit the crime in violation of § 924 (c); again each received a 25-year sentence for the robbery and a 10-year sentence for the firearms count, the sentences to run consecutively to each other and to the sentences previously imposed.

During the sentencing proceedings following each conviction, counsel for petitioners argued that the imposition of cumulative penalties for the two crimes was impermissible because the § 2113 (d) charge merged with the firearms offense for purposes of sentencing. The District Court disagreed, holding that "the statutes and the legislative history indicat[e] an intention [by § 924 (c)] to impose an additional punishment." App. 17. The Court of Appeals for the Sixth Circuit affirmed without a published opinion, 542 F. 2d 1177 (1976). We granted certiorari, 430 U. S. 964 (1977), to resolve an apparent conflict between the decision below and the decision of the Court of Appeals for the Eighth Circuit in *United States* v. *Eagle,* 539 F. 2d 1166 (1976).[3] We reverse.

---

[3] In agreement with the Court of Appeals for the Sixth Circuit in these cases are the Court of Appeals for the Fourth Circuit, *United States* v. *Crew,* 538 F. 2d 575 (1976), and the Court of Appeals for the Fifth Circuit, *Perkins* v. *United States,* 526 F. 2d 688 (1976).

## II

Quite clearly, §§ 924 (c) and 2113 (d) are addressed to the same concern and designed to combat the same problem: the use of dangerous weapons—most particularly firearms—to commit federal felonies.[4]  Although we agree with the Court of Appeals that § 924 (c) creates an offense distinct from the underlying federal felony, *United States* v. *Ramirez,* 482 F. 2d 807 (CA2 1973); *United States* v. *Sudduth,* 457 F. 2d 1198 (CA1 1972), we believe that this is the beginning and not the end of the analysis necessary to answer the question presented for decision.

---

[4] Both the Senate and House Reports on the 1934 Bank Robbery Act, which first made bank robbery a federal offense and which included the provisions of § 2113 (d), state that the legislation was directed at the rash of "gangsterism" by which roving bandits in the Southwest and Northwest would rob banks and then elude capture by state authorities by crossing state lines. S. Rep. No. 537, 73d Cong., 2d Sess., 1 (1934); H. R. Rep. No. 1461, 73d Cong., 2d Sess., 2 (1934). The vast majority of such bank robberies were undoubtedly accomplished by the use of guns of various sorts. Indeed, as originally proposed, the provision that became § 2113 (d) covered only the use of "dangerous weapons." The "or device" language was added in response to concern expressed on the House floor that the provision would not reach the conduct of a bank robber who walked into a bank with a bottle of nitroglycerin and threatened to blow it up unless his demands were met. 78 Cong. Rec. 8132–8133 (1934). Thus, although § 2113 (d) undoubtedly covers bank robberies with weapons and devices other than firearms, the use of guns to commit bank robbery was the primary evil § 2113 (d) was designed to deter.

On the other hand, although the overriding purpose of § 924 (c) was to combat the increasing use of *guns* to commit federal felonies, the ambit of that provision is broader. The section imposes increased penalties when a "firearm" is used to commit, or is unlawfully carried during the commission of any federal felony. Title 18 U. S. C. § 921 (a) (3) (D) defines "firearm" to include "any destructive device." A "destructive device," in turn, is defined by § 921 (a) (4) (A) to include "any explosive, incendiary, or poison gas—(i) bomb, (ii) grenade, (iii) rocket . . . , (iv) missile . . . , (v) mine, or (vi) device similar to any of the devices described in the preceding clauses." See *United States* v. *Melville,* 309 F. Supp. 774 (SDNY 1970).

In *Blockburger* v. *United States,* 284 U. S. 299 (1932), this Court set out the test for determining "whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment." *Brown* v. *Ohio,* 432 U. S. 161, 166 (1977). We held that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger* v. *United States, supra,* at 304. See also *Brown* v. *Ohio, supra,* at 166; *Ianelli* v. *United States,* 420 U. S. 770 (1975); *Gore* v. *United States,* 357 U. S. 386 (1958). The *Blockburger* test has its primary relevance in the double jeopardy context, where it is a guide for determining when two separately defined crimes constitute the "same offense" for double jeopardy purposes. *Brown* v. *Ohio, supra.*[5]

Cases in which the Government is able to prove violations of two separate criminal statutes with precisely the same factual showing, as here, raise the prospect of double jeopardy and the possible need to evaluate the statutes in light of the *Blockburger* test. That test, the Government argues, is satisfied in this litigation.[6] We need not reach the issue. Before an

---

[5] The Double Jeopardy Clause "protects against multiple punishments for the same offense," *North Carolina* v. *Pearce,* 395 U. S. 711, 717 (1969), and prohibits multiple prosecutions for the "same offense," *Jeffers* v. *United States,* 432 U. S. 137, 150–151 (1977).

[6] In its attempt to demonstrate that §§ 924 (c) and 2113 (d) are distinct and separately punishable offenses under the *Blockburger* test, the Government apparently reads the phrase "by the use of a dangerous weapon or device" in § 2113 (d) to modify the word "assaults" as well as the phrase "puts in jeopardy the life of any person." Brief for United States 9–10. The lower courts are divided on this issue. Those of the opinion that § 2113 (d) is to be read as the Government reads it include *United States* v. *Crew, supra,* at 577. See *Perkins* v. *United States, supra; United States* v. *Waters,* 461 F. 2d 248 (CA10 1972). Other courts read the provision disjunctively, and hold that the phrase "by the use of a dangerous weapon or device" modifies only the phrase "puts in jeopardy

12

examination is made to determine whether cumulative punishments for the two offenses are constitutionally permissible, it is necessary, following our practice of avoiding constitutional decisions where possible, to determine whether Congress intended to subject the defendant to multiple penalties for the single criminal transaction in which he engaged. *Jeffers* v. *United States*, 432 U. S. 137, 155 (1977). Indeed, the Government concedes that "there remains at least a possibility that Congress, although constitutionally free to impose additional penalties for violation of 18 U. S. C. § 924 (c) in a case like the present one, has otherwise disclosed its intention not to do so." Brief for United States 11. We believe that several tools of statutory construction applied to the statutes "in a case like the present one"—where the Government relied on the same proofs to support the convictions under both statutes—require the conclusion that Congress cannot be said to

the life of any person" and not the word "assaults." *United States* v. *Beasley*, 438 F. 2d 1279 (CA6 1971); *United States* v. *Rizzo*, 409 F. 2d 400 (CA7 1969). See *United States* v. *Coulter*, 474 F. 2d 1004 (CA9 1973). Although we have never authoritatively construed § 2113 (d), we have implicitly given it the same gloss as the Government. *Prince* v. *United States*, 352 U. S. 322, 329 n. 11 (1957). We now expressly adopt this reading of the statute. As Judge McCree observed in *Beasley:*
"[The language of § 2113 (d)] clearly requires the commission of something more than the elements of the offense described in § 2113 (a). Subsection (a) punishes an attempt to take 'from the person or presence of another any . . . thing of value . . . in the . . . custody . . . of any bank . . .' when that taking is done 'by force and violence, or by intimidation.' Force and violence is the traditional language of assault, and something more than an assault must be present to authorize the additional five year penalty under § 2113 (d).

. . . .

". . . In order to give lawful meaning to Congress' enactment of the aggravating elements in 18 U. S. C. § 2113 (d), the phrase 'by the use of a dangerous weapon or device' must be read, regardless of punctuation, as modifying both the assault provision and the putting in jeopardy provision." 438 F. 2d, at 1283–1284 (concurring in part and dissenting in part).

have authorized the imposition of the additional penalty of § 924 (c) for commission of bank robbery with firearms already subject to enhanced punishment under § 2113 (d). Cf. *Gore* v. *United States, supra.*

### III

First is the legislative history of § 924 (c). That provision, which was enacted as part of the Gun Control Act of 1968, was not included in the original Gun Control bill, but was offered as an amendment on the House floor by Representative Poff. 114 Cong. Rec. 22231 (1968).[7] In his statement immediately following his introduction of the amendment, Representative Poff observed:

> "For the sake of legislative history, it should be noted that my substitute is not intended to apply to title 18, sections 111, 112, or 113 which already define the penalties for the use of a firearm in assaulting officials, with sections 2113 or 2114 concerning armed robberies of the mail or banks, with section 2231 concerning armed assaults upon process servers or with chapter 44 which defines other firearm felonies." *Id.,* at 22232.

This statement is clearly probative of a legislative judgment that the purpose of § 924 (c) is already served whenever the substantive federal offense provides enhanced punishment for use of a dangerous weapon.[8] Although these remarks are of course not dispositive of the issue of § 924 (c)'s reach, they are certainly entitled to weight, coming as they do from the provision's sponsor. This is especially so because Represent-

---

[7] Because the provision was passed on the same day it was introduced on the House floor, it is the subject of no legislative hearings or committee reports.

[8] Title 18 U. S. C. §§ 111, 112, and 2231 provide for an increased maximum penalty where a "deadly or dangerous weapon" is used to commit the substantive offense. Title 18 U. S. C. §§ 113 (c) and 2114 enhance the punishment available for commission of the substantive offense when the defendant employs a "dangerous weapon."

ative Poff's explanation of the scope of his amendment is in complete accord with, and gives full play to, the deterrence rationale of § 924 (c). *United States* v. *Eagle,* 539 F. 2d, at 1172. Subsequent events in the Senate and the Conference Committee pertaining to the statute buttress our conclusion that Congress' view of the proper scope of § 924 (c) was that expressed by Representative Poff. Shortly after the House adopted the Poff amendment, the Senate passed an amendment to the Gun Control Act, introduced by Senator Dominick, that also provided for increased punishment whenever a firearm was used to commit a federal offense. 114 Cong. Rec. 27142 (1968). According to the analysis of its sponsor, the Senate amendment, contrary to Mr. Poff's view of § 924 (c), would have permitted the imposition of an enhanced sentence for the use of a firearm in the commission of any federal crime, even where allowance was already made in the provisions of the substantive offense for augmented punishment where a dangerous weapon is used. *Id.,* at 27143. A Conference Committee, with minor changes,[9] subsequently adopted the Poff version of § 924 (c) in preference to the Dominick amendment. H. R. Conf. Rep. No. 1956, 90th Cong., 2d Sess., 31–32 (1968).

Second, to construe the statute to allow the additional sentence authorized by § 924 (c) to be pyramided upon a sentence already enhanced under § 2113 (d) would violate the established rule of construction that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *United States* v. *Bass,* 404 U. S. 336, 347 (1971);

---

[9] The prohibitions on suspended sentences and probation were made applicable only to second and subsequent convictions, and restrictions on concurrent sentences were eliminated. Title II of the Omnibus Crime Control Act of 1970, 84 Stat. 1889, amended § 924 (c) by reimposing the restriction that no sentence under that section could be served concurrently with any term imposed for the underlying felony. The amendment also reduced the minimum mandatory sentence of imprisonment for repeat offenders from five to two years.

*Rewis* v. *United States,* 401 U. S. 808, 812 (1971). See *Adamo Wrecking Co.* v. *United States,* 434 U. S. 275, 284–285 (1978). The legislative history of § 924 (c) is of course sparse, yet what there is—particularly Representative Poff's statement and the Committee rejection of the Dominick amendment—points in the direction of a congressional view that the section was intended to be unavailable in prosecutions for violations of § 2113 (d). Even where the relevant legislative history was not nearly so favorable to the defendant as this, this Court has steadfastly insisted that "doubt will be resolved against turning a single transaction into multiple offenses." *Bell* v. *United States,* 349 U. S. 81, 84 (1955); *Ladner* v. *United States,* 358 U. S. 169 (1958). See *Prince* v. *United States,* 352 U. S. 322 (1957). As we said in *Ladner:* "This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." 358 U. S., at 178. If we have something "more than a guess" in this case, that something—Representative Poff's commentary and the Conference Committee's rejection of the Dominick amendment—is incremental knowledge that redounds to petitioners' benefit, not the Government's.

Finally, our result is supported by the principle that gives precedence to the terms of the more specific statute where a general statute and a specific statute speak to the same concern, even if the general provision was enacted later. See *Preiser* v. *Rodriguez,* 411 U. S. 475, 489–490 (1973). Cf. 2A C. Sands, Sutherland, Statutory Construction § 51.05 (4th ed. 1973). This guide to statutory construction has special cogency where a court is called upon to determine the extent of the punishment to which a criminal defendant is subject for his transgressions. In this context, the principle is a corollary of the rule of lenity, an outgrowth of our reluctance to increase or multiply punishments absent a clear and definite legislative

directive. Indeed, at one time, the Government was not insensitive to these concerns respecting the availability of the additional penalty under § 924 (c). In 1971, the Department of Justice found the interpretive preference for specific criminal statutes over general criminal statutes of itself sufficient reason to advise all United States Attorneys not to prosecute a defendant under § 924 (c)(1) where the substantive statute the defendant was charged with violating already "provid[ed] for increased penalties where a firearm is used in the commission of the offense." 19 U. S. Attys. Bull. 63 (U. S. Dept. of Justice, 1971).

Obviously, the Government has since changed its view of the relationship between §§ 924 (c) and 2113 (d). We think its original view was the better view of the congressional understanding as to the proper interaction between the two statutes. Accordingly, we hold that in a prosecution growing out of a single transaction of bank robbery with firearms, a defendant may not be sentenced under both § 2113 (d) and § 924 (c). The cases are therefore reversed and remanded to the Court of Appeals for proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE REHNQUIST, dissenting.

I am unable to agree with the Court's conclusion in this litigation that petitioners, upon being convicted and sentenced under 18 U. S. C. § 2113 (d) for armed robbery, could not have their sentence enhanced pursuant to the provisions of 18 U. S. C. § 924 (c), which provides that when a defendant uses a firearm in the commission of a felony, he "shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years." The plain language of the statutes involved certainly confers this sentencing authority upon the District Court. The Court chooses to avoid this

plain meaning by resort to a canon of construction with which no one disagrees, "our practice of avoiding constitutional decisions where possible," *ante*, at 12. The Court then relies on a statement made on the floor of the House of Representatives by Congressman Poff, who sponsored the amendment which became this part of the Gun Control Act of 1968, to the effect that the amendment would not apply to offenses governed by 18 U. S. C. § 2113. But neither of these proffered rationales justifies the Court's decision today.

The canon of construction which the Court purports to follow is like all other canons, only a guide to enable this Court to perform its function. As the Court said in *Shapiro* v. *United States,* 335 U. S. 1, 31 (1948):

> "The canon of avoidance of constitutional doubts must, like the 'plain meaning' rule, give way where its application would produce a futile result, or an unreasonable result 'plainly at variance with the policy of the legislation as a whole.'"

While legislative history as well as the language of the statute itself may be used to interpret the meaning of statutory language, *United States* v. *American Trucking Assns.,* 310 U. S. 534, 543 (1940), the decisions of this Court have established that some types of legislative history are substantially more reliable than others. The report of a joint conference committee of both Houses of Congress, for example, or the report of a Senate or House committee, is accorded a good deal more weight than the remarks even of the sponsor of a particular portion of a bill on the floor of the chamber. See, *e. g., Chandler* v. *Roudebush,* 425 U. S. 840, 858 n. 36 (1976); *United States* v. *Automobile Workers,* 352 U. S. 567, 585–586 (1957). It is a matter of common knowledge that at any given time during the debate, particularly a prolonged debate, of a bill the members of either House in attendance on the floor may not be great, and it is only these members, or those who later read the remarks in the Congressional

Record, who will have the benefit of the floor remarks. In the last analysis, it is the statutory language embodied in the enrolled bill which Congress enacts, and that must be our first reference point in interpreting its meaning.

The Court's disregard of this plain meaning is inappropriate in this litigation both because of the circumstances under which the Gun Control Act was passed in June 1968, and because of the gauzy nature of the constitutional concerns which apparently underlie its reluctance to read the statutes as they are written. Several different bills dealing with firearms control, which had been bottled up in various stages of the legislative process prior to June 1968, were brought to the floor and enacted with dramatic swiftness following the assassination of Senator Robert F. Kennedy in the early part of that month. Senator Kennedy's assassination, following by less than three months the similar killing of Reverend Martin Luther King, obviously focused the attention of Congress on the problem of firearms control. It seems to me not only permissible but irresistible, in reading the language of the two statutes, to conclude that Congress intended when it enacted § 924 (c) to authorize the enhancement of the sentence already imposed by virtue of 18 U. S. C. § 2113 (d).

The Court expresses concern, however, that if this construction were adopted problems of double jeopardy would be raised by virtue of our decision in *Blockburger* v. *United States,* 284 U. S. 299 (1932). *Blockburger,* of course, was not based on the Double Jeopardy Clause of the Constitution, but simply upon an analysis of relevant principles of statutory construction for determining "whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment." *Brown* v. *Ohio,* 432 U. S. 161, 166 (1977); *ante,* at 11. To speak of a congressional provision for enhanced punishment for an offense, as § 924 (c) clearly is, as raising constitutional doubts under the *"Blockburger* test" is to use the language of metaphysics, rather than of constitutional law.

*Brown* v. *Ohio, supra,* decided last Term, provides no more support for the majority's position. That case involved two entirely separate and distinct prosecutions for the same act, one for the crime of stealing an automobile and the other for the admittedly lesser included offense of operating the same vehicle without the owner's consent. And even there the Court recognized that:

> "[T]he double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." 432 U. S., at 165 (footnote omitted).

Petitioners in this litigation were separately tried for two separate armed bank robberies, and were found guilty of both aggravated bank robbery in violation of 18 U. S. C. §§ 2113 (a) and (d), and of using firearms to commit the robbery in violation of 18 U. S. C. § 924 (c). In addition to imposing sentences on them authorized under the provisions of § 2113 (d), the court imposed additional sentences which it believed and I believe were clearly authorized by the language of § 924 (c). Certainly the language of the double jeopardy provision of the Fifth Amendment, which prohibits a person from being twice put in jeopardy of life or limb, has not the slightest application to this sort of criminal prosecution. It is only by an overly refined analysis, which first suggests that the double jeopardy prohibition encompasses enhancement of penalty for an offense for which there has been but one trial, and then concludes that the plain language of Congress providing for such enhancement shall not be read in that way in order to avoid this highly theoretical problem, that the Court is able to reach the result it does.

The language of § 924 (c), together with the circumstances surrounding its enactment, makes it abundantly clear to me that it was intended to authorize enhancement of punishment in these circumstances. I do not believe that Congressman Poff's statement on the floor of the House of Representatives is sufficient to overcome the meaning of this language, and I think that § 924 (c), so read, is clearly constitutional. I therefore dissent.