**UNITED STATES of America**

v.

**McKINNON BRIDGE CO., INC., Simpson Construction Company, Inc., T. Benson McKinnon and Claude S. Simpson, Defendants.**

No. 81–30044.

United States District Court,
M. D. Tennessee,
Nashville Division.

May 20, 1981.

---

John Burley, Mark Prosperi, Dept. of Justice, Chicago, Ill., for plaintiff.

Vincent Wehby, Nashville, Tenn., for McKinnon Bridge and T. Benson McKinnon.

James Bisson, III and Erwin Mitchell, Dalton, Ga., for Simpson Construction and Claude S. Simpson.

## MEMORANDUM

WISEMAN, District Judge.

This case is before the Court to consider two defense motions. The first motion seeks dismissal of Count One of the Indictment, which alleges a violation of section one of the Sherman Act, 15 U.S.C. § 1. The second motion attacks Counts Two through Six, which allege violations of the federal mail fraud statute, 18 U.S.C. § 1341. Both motions are denied.

### Count One

Defendants argue that Count One should be dismissed because section one of the Sherman Act is unconstitutionally overbroad and vague. Contrary to the government's facile assertion, Brief for United States 44–45, there is a difference between

vagueness and overbreadth, although it is often true that a vague statute is also overbroad. *See Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 927 (6th Cir. 1980). A statute is void for vagueness if it fails "to give persons of common intelligence fair notice of the persons covered and the conduct proscribed." *Id.* The overbreadth doctrine prohibits a statute from criminalizing constitutionally protected activity. A statute is also overbroad if its sweep has a chilling effect on constitutionally protected conduct, even though the statute does not directly forbid protected activity. *See id.* The two doctrines are distinct in that an overbroad statute may be clear and precise in penalizing protected activity, while an unconstitutionally vague statute need not even reach protected activity. L. Tribe, American Constitutional Law § 12–28 (1978) [hereinafter cited as Tribe].

■ It is also important to note a distinction made in applying the two doctrines. A litigant raising a vagueness challenge must show that the statute in question is vague as applied to his own conduct, without regard to its potentially vague application in other circumstances. *See Parker v. Levy*, 417 U.S. 733, 755–56, 94 S.Ct. 2547, 2561–2562, 41 L.Ed.2d 439 (1974); Tribe, *supra*, § 12–29. In contrast, a litigant may make a successful overbreadth challenge even when his conduct is clearly not protected by the Constitution and could be the subject of a narrowly drawn criminal statute. *See NAACP v. Button*, 371 U.S. 415, 432–33, 83 S.Ct. 328, 337–338, 9 L.Ed.2d 405 (1963); Tribe, *supra*, §§ 12–24, 12–28.

■ The Court summarily rejects defendants' vagueness challenge. Price fixing of the sort alleged in the Indictment is indisputably prohibited by section one, and defendants cannot plausibly argue that they lacked fair notice of the illegality of bidrigging. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *United States v. Addyston Pipe & Steel Co.*, 85 F. 271, 293 (6th Cir. 1898), *modified*, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899).

■ The manifest illegality of bidrigging does not, however, similarly foreclose consideration of defendants' overbreadth challenge. *See Thornhill v. Alabama*, 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–742, 84 L.Ed. 1093 (1940). On its face, section one of the Sherman Act would appear to be a prime candidate for an overbreadth challenge. As the Supreme Court recently observed in *United States v. United States Gypsum Co.*, 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854 (1978), "[t]he Sherman Act, unlike most traditional criminal statutes, does not, in clear and categorical terms, identify the conduct which it proscribes." The Court further noted that "the behavior proscribed by the Act is often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct." *Id.* at 441, 98 S.Ct. at 2875. Most significant in terms of overbreadth analysis is the Court's statement that "salutary and pro-competitive conduct lying close to the borderline of impermissible conduct might be shunned by businessmen who chose to be excessively cautious in the face of uncertainty regarding possible exposure to criminal punishment . . . ." *Id.* These concerns led to the Supreme Court's holding in *Gypsum* that criminal antitrust liability requires intent. *See id.* at 444, 98 S.Ct. at 2877.

The concerns expressed in *Gypsum* about the Sherman Act's potential for "overdeterence," *id.* at 444, 98 S.Ct. at 2877, suggest the possibility that fear of criminal liability might deter businessmen from engaging in legitimate first amendment activity relating to their businesses. Most notably, it is conceivable that the Sherman Act's prohibitions might deter businessmen from associating with one another for fear that the Justice Department, if not the courts, might someday view their protected associational activities as conspiracies in restraint of trade.

■ A statute is not, however, vulnerable to an overbreadth challenge simply because unconstitutional applications can be imagined. Tribe, *supra*, § 12–25. When a statute regulates economic conduct, its

overbreadth must be real as well as substantial when judged in relation to its plainly legitimate sweep. *Cf. Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973) (challenge to a criminal statute imposing blanket prohibitions on political activity of civil service employees). Defendants have not made that showing in this case. Defendants have presented hypotheticals of minimal plausibility to illustrate their view of the statute's potential overbreadth, but the Court is unpersuaded by defendants' argument that businessmen in the real world might be significantly deterred from exercising their first amendment rights for fear of criminal antitrust liability. Defendants have not suggested that the Justice Department intends to use criminal prosecutions to delineate the outer limits of the Sherman Act, nor can the Court make that assumption. Indeed, the *mens rea* requirement imposed by *Gypsum* offers substantial assurance that prosecutions in the "gray zone," 438 U.S. at 441, 98 S.Ct. at 2875, would be futile. *Gypsum* teaches that good faith errors of judgment cannot give rise to criminal liability, *see id.*, and thus the concern that businessmen will desist from constitutionally protected activity for fear of criminal prosecution is minimal.

Accordingly, the Court refuses to hold that section one of the Sherman Act is overbroad. Congressional acts are clothed with "strong presumptive validity," *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 597, 9 L.Ed.2d 561 (1963), and defendants have not overcome that presumption by showing that section one has a substantial capacity to deter constitutionally protected activity.

### Counts Two through Six

Defendants have challenged the mail fraud counts on several grounds, only one of which merits serious discussion. In response to the remainder of these challenges, the Court holds that the Indictment sufficiently alleges mail fraud violations that are distinct from the Sherman Antitrust count. *See United States v. Azzarelli Construction Co.*, 612 F.2d 292, 298 (7th Cir. 1979), *cert. denied*, 447 U.S. 920, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980). The Court has given due consideration to defendants' motion and all of their arguments, but the Court must conclude that there is no principled legal basis for dismissing these counts. As the Court made known at the oral hearing on these motions, the Justice Department's "stacking" of mail fraud counts in this case deeply offends the Court's sense of justice. If these defendants are convicted on all counts at trial, the Court will not impose punishment in excess of that permitted by the Sherman Act. The Court would also give serious consideration to severance motions. The Court must conclude, however, that there is no legal basis for pretrial dismissal of the mail fraud counts.

Defendants' argument that the Antitrust Practice and Procedures Act of 1974, Pub.L. No. 93–528, 88 Stat. 1706, codified at 15 U.S.C. § 1, preempts the mail fraud statute merits discussion. The Act made section one violations felonies with a maximum prison term of three years. Prior to that time, section one violations were misdemeanors. Defendants contend that this congressional action reflected a legislative intent to define the maximum penalty for engaging in antitrust schemes. Defendants argue, in essence, that the Act effected a repeal by implication of 18 U.S.C. § 1341, the mail fraud statute, as it might otherwise apply to garden variety price fixing conspiracies, as well as other anticompetitive activity. Stated another way, it is defendants' position that the 1974 Act manifests a congressional intent to limit prosecutions of anticompetitive activity to the Sherman Act alone. Brief for McKinnon Defendants 12.

In approaching this issue, the Court finds helpful a recent decision from the Southern District of New York. In *United States v. Abrahams*, 493 F.Supp. 296 (S.D.N.Y.1980), the court addressed the question of whether the criminal provisions of the Commodity Futures Trading Commission Act of 1974 preempted the mail fraud statute "insofar as it relates to schemes to defraud involving futures." *Id.* at 300. As that court ob-

served, the question of whether passage of a specific law precludes prosecution under an earlier, more general statute is a question of legislative intent. Repeal by implication is not favored, and a finding of implicit repeal follows only when the later act "is clearly intended to be in substitution for the earlier act." *Id.* In determining legislative intent, the *Abrahams* court used a two-step analysis; first, the court examined the legislative history of the Act to see if Congress had expressed an intent to repeal, at least in part, the mail fraud statute; second, the court examined the two statutes to determine whether there was a "positive repugnancy" between their provisions that would clearly imply an intent to repeal applicable provisions of the earlier act. *See United States v. Batchelder*, 442 U.S. 114, 122, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979).

■■■ The Court has examined the available legislative history and finds absolutely no express indication that Congress intended to affect the applicability of the mail fraud statute in any way when it enacted the Antitrust Procedures and Penalties Act of 1974. *See* H.R.Rep. No. 93–1463, 93d Cong., 2d sess., reprinted in [1974] U.S.Code Cong. & Ad.News 6535; 119 Cong.Rec. 3449, 24,596 (1973); 120 Cong.Rec. 33,737, 36,337, 36,346, 36,365, 38,583, 39,123, 39,383 (1974). It would appear that the primary reason for increasing the section one penalties was to enhance the deterrent effect of the Sherman Act's criminal provisions. This purpose is not inconsistent with the application of the mail fraud statute in appropriate cases.

■■■ The Court further finds an absence of any repugnancy between the provisions of the mail fraud statute and section one of the Sherman Act. *Cf. United States v. Abrahams, supra*, 493 F.Supp. at 302–04. As this case demonstrates, the two provisions have a *substantial capacity for overlapping* such that a single scheme might violate both laws. That situation does not forbid prosecution under both provisions, however. *See United States v. Green*, 494 F.2d 820, 827 (5th Cir.), *cert. denied*, 419 U.S. 1004, 95 S.Ct. 325, 42 L.Ed.2d 280 (1974). This does not necessarily mean that cumulative *punishments* could be imposed on each separate violation; *see Pandelli v. United States*, 635 F.2d 533 (6th Cir. 1980). The Court need not address that question, however, since the Court's position on potential sentencing is clear.

Defendants have relied upon *United States v. Henderson*, 386 F.Supp. 1048 (S.D.N.Y.1974), in support of their argument that the more particularized provisions of the Sherman Act preclude prosecution under the mail fraud statute. In that case, Judge Weinfeld dismissed three mail fraud counts of an indictment that were based upon essentially the same allegations contained in counts charged under the Internal Revenue Code's criminal provisions. This Court fully agrees with Judge Weinfeld's superior analysis, but it is inapplicable to this case. In footnote 18 of his opinion, 386 F.Supp. at 1053, Judge Weinfeld observed that 18 U.S.C. § 1341 is properly applied to the fraudulent sale of services to the government, which is precisely the type of offense charged in the instant case.

Defendants have also submitted a recent Memorandum Opinion from the Eastern District of Virginia in support of their position. *United States v. Computer Sciences Corp.*, 511 F.Supp. 1125 (1981). In that case, the district judge dismissed forty mail and wire fraud counts from an indictment that also contained RICO and False Claims Act counts. The opinion's analysis relies on two recent Supreme Court decisions in support of its conclusion that those counts should be dismissed. The two cases are *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980); and *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). *Busic* and *Simpson* dealt with the issue of whether cumulative punishments could be imposed under an enhancement statute when the predicate offense contained its own enhancement provisions. This Court fails to see how *Busic* and *Simpson* provide any authority whatsoever for dismissing counts of an indictment prior to trial in situations

like that presented in this case. *Simpson* and *Busic* may have some bearing on the Court's authority to impose cumulative sentences if there are convictions in this case, but they do not suggest a basis for pretrial dismissal of the mail fraud counts. In this Court's opinion, the district court's reliance on *Busic* and *Simpson* in the *Computer Sciences Corp.* case was misplaced.

The motions to dismiss Counts Two through Six are denied.