**Clay Edward BARNETT, Plaintiff-Appellant,**

v.

**Norman CARLSON, Director, U.S. Bureau of Prisons, Defendant-Appellee.**

No. 83–8635.

United States Court of Appeals, Eleventh Circuit.

Oct. 26, 1984.

---

George P. Taylor, University, Ala. (court-appointed), for plaintiff-appellant.

Barbara V. Tinsley, Jere W. Morehead, Asst. U.S. Attys., Atlanta, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, CLARK, Circuit Judge, and THOMAS*, District Judge.

GODBOLD, Chief Judge:

Appellant Barnett sought a writ of mandamus from the district court directing the Director of the U.S. Bureau of Prisons to correct the computation of his sentences. The district court denied the writ. We reverse and direct that the writ issue.

In 1975 Barnett was sentenced in Northern District of Georgia in case No. 74–84R as follows:

Count I: 20 years

Count II: 25 years concurrent with Count I

Count III: 10 years concurrent with Counts I and II

---

* Honorable Daniel Holcombe Thomas, U.S. District Judge for the Southern District of Alabama, sitting by designation.

Count IV: 5 years concurrent with Counts I, and II

■ Later in 1975 Barnett was sentenced in the same court in CR75–17R to five years and in CR75–18R to five years consecutive to the sentence in CR75–17R. Both of these sentences were silent as to how they were to run with the sentences earlier imposed in CR74–84R, therefore they ran concurrent with those earlier sentences.

In 1976 the conviction under Count I in CR74–84R and the sentence imposed thereunder were vacated on appeal. *U.S. v. Hicks*, 524 F.2d 1001 (5th Cir.), *cert. denied sub nom. Barnett v. U.S.*, 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353 (1976). This left Barnett with a maximum of 25 years under the Georgia sentences.

In 1978 Barnett was convicted in Eastern District of Illinois and sentenced to ten years with the sentence "to run consecutively to any federal or state sentences presently being served or which remain to be served." At this point he had total sentences of 35 years.

Barnett filed a 28 U.S.C. § 2255 petition in Northern District of Georgia attacking the viable Georgia sentences. Apparently the petition attacked the sentence under Count III of CR74–84R on double jeopardy grounds and all the viable Georgia sentences as violating the Youth Corrections Act (YCA). 18 U.S.C. § 5005 *et seq.* The sentencing judge was no longer on the district court, and the petition fell to a different judge.

In October 1981 the district court entered an order addressing the sentences imposed in CR74–84R. The order began with this statement by the court: "This case is before the Court upon the motion of defendant, Clay Edward Barnett, pursuant to 28 U.S.C. § 2255." The order stated:

Defendant having been eligible for such consideration, *he is entitled to have his sentence vacated* and consideration given to whether he would have "benefited" from treatment under the [Federal Youth Corrections] Act at the time of sentencing and to be resentenced by the Court after such consideration.

ACCORDINGLY, defendant's sentence on Count Three imposed under 18 U.S.C. § 924(c)(1) is *vacated;* defendant's sentences under Counts Two and Four are *vacated* and his matter is set before this Court for 3:30 o'clock P.M. on the 1st day of December, 1981, for a determination as to whether defendant would have benefited from treatment under the Federal Youth Corrections Act and for *sentencing* upon Counts Two and Four of the indictment after such determination is made. (Emphasis added).

Count III was vacated under *Simpson v. U.S.*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1977), because it overlapped Count II.

At the resentencing on December 1, 1981 Barnett orally moved to vacate the sentences in CR75–17R and CR75–18R on the ground of failure to comply with the YCA. The district court entered its judgments and commitments in all three cases. It vacated the sentences in CR75–17R and CR75–18R. With respect to all the sentences it found that defendant would not benefit from commitment under the YCA. It resentenced Barnett as follows: In CR74–84R, 25 years on Count II and five years on Count IV concurrent with Count II; in CR75–17R, five years concurrent to the sentences in CR74–84R; in CR75–18R, five years consecutive to CR75–17R and concurrent with the sentences under CR74–84R. The upshot of these combined sentences was a total of 25 years, the same maximum time as imposed by the 1975 Georgia sentences. The sentences were silent as to the Illinois sentence.

After the resentencing, since all the 1981 Georgia sentences were silent as to the Illinois sentence, the Bureau of Prisons computed Barnett's new sentence as running concurrently with the Illinois sentence and to begin December 27, 1978, the date of the Illinois sentence.

Later, on review, the Bureau of Prisons concluded that the sentences imposed December 1, 1981 were intended as a correction of the original 1975 sentences and were not new sentences following the vacation of illegal sentences, and, further, that

the "corrected" sentences were to be considered as *nunc pro tunc* and would be applied retroactively to 1975. By these steps the Bureau revitalized the 1975 Georgia "anchor" sentences and treated the ten-year Illinois sentence as consecutive to them, with the result that Barnett had 35 years total sentences dating from 1975.

Barnett then filed in Northern District of Georgia this petition for mandamus, asking that the Bureau be ordered to correct its records. Barnett asserted that the sentences imposed in December 1981 were new sentences totaling 25 years, and that they ran concurrently with the Illinois sentence. This was precisely the construction originally given by the Bureau of Prisons.

The petition was presented to the judge who had entered the 1981 order and had resentenced Barnett in December 1981.

Barnett's contention required the court to examine its October and December 1981 orders. The court held that while Barnett's petition that resulted in the 1981 order had been brought under 28 U.S.C. § 2255, relief on this section was appropriate as to only one count that was attacked on constitutional grounds (apparently Count III) and that all remaining relief had been granted under Rule 35(a) Fed.R. Crim.P. The court held that in 1981 it was simply correcting illegal sentences in response to Barnett's motions to the court, and that the effective action of the court in imposing the new sentences on December 1, 1981 was the entering of *nunc pro tunc* sentences to correct the illegal 1975 sentences. It held that the 1981 order did not change or affect the Illinois sentence imposed to run consecutive to any other federal sentence.

■ The conclusions of the district court cannot stand. In the order denying mandamus and before reaching the above conclusions, the court found,

Based upon the agreed statement of material facts and the record in the case, it is *undisputed* that:

. . . . .

11. All sentences which were *vacated* by this Court and for which sentence was imposed on December 1, 1981 were *vacated* by this Court because the sentencing court in 1975 failed to make explicit findings that defendant would not benefit [under the YCA]. (Emphasis added).

Barnett had petitioned to have the 1975 sentences vacated, the court found that he was entitled to have them vacated, ordered them vacated, ordered Barnett resentenced, and resentenced him. Nothing in the October order or the orders and commitments entered in December even hints that the court intended to act or purported to act under Rule 35. As previously noted, the court itself described the matter as before it pursuant to § 2255. A paragraph of the October order, quoted above, concerned application for bail; this implies that the "old" 25-year sentences had been wiped out. In the proceedings in October and December 1981 the Bureau made no contention that § 2255 was not an available vehicle. Barnett's claim of invalid sentences was coupled with a claim that the conviction under Count III was unconstitutional because it violated the double jeopardy clause. This claim was sustained. It would not have been cognizable at all under Rule 35.[1]

■ The Bureau contends that the district court had authority in 1981 under Rule 35(a) to correct an illegal sentence on its own motion, and that in its 1981 orders it actually did construe the § 2255 petition as a Rule 35 motion and acted thereon. The former is correct, but for the reasons we have set out, the record will not support the latter contention.[2]

1. The order granting summary judgment to the Bureau in this mandamus action does not itself purport to be a Rule 35(a) action "correcting" the 1981 orders. Even if it did, Rule 35 relief could not be granted. The rule permits correction of an illegal sentence, and there is nothing illegal about the 1981 sentences.

2. The district court, in the present case, made no finding that its intention in 1981 was to make a *nunc pro tunc* correction. Rather the order granting summary judgment implies the contrary:

While this Court was of the opinion at the time sentence was reimposed upon petitioner

■ The Bureau also asserts that Sec. 2255 was not a remedy available to Barnett to attack the 1975 sentences for absence of the findings required by the YCA, and, therefore, the 1981 orders had to have been entered under Rule 35. Pretermitting whether this contention would advance the Bureau's position, the premise is wrong. In *Dorszynski v. U.S.*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), the case that first required the express "no benefit" finding for a sentence of a young defender to be valid, the petitioner sought relief pursuant to both Rule 35 and § 2255. The Court did not distinguish between these two remedies. More recently in *U.S. v. Brown*, 723 F.2d 826 (11th Cir.1984) this court in a § 2255 case vacated a sentence for failure to make the required "no benefit" finding. As Wright & Miller point out, there is some overlap between Rule 35 and the statutory motion to vacate or correct sentence under § 2255. 3C *Wright Federal Practice and Procedure*, § 581 (3d Ed.1982). The Tenth Circuit recognized § 2255 as an appropriate vehicle in *U.S. v. Ahgoom*, 596 F.2d 433 (10th Cir.1979). The Fifth Circuit noted the availability of § 2255 in *Puente v. U.S.*, 676 F.2d 141 (5th Cir.1982). When Barnett challenged his sentences through a § 2255 motion, the Bureau made no contention that § 2255 was not an available vehicle.

■ All of this brings us to the matter of the Bureau's computation of Barnett's sentences. The Bureau's Policy Statement dated October 23, 1973 covers "computation procedures for sentencings that are vacated but result in a resentencing." Because of our decision above, this Policy Statement applies to the 1981 sentences. Under the Policy Statement the Bureau first had to determine whether the resentencing sentences were silent on the matter of computing the new times, or whether they ordered the new terms to run *nunc pro tunc*. The sentences were silent. The Policy Statement requires in this situation that the Bureau will compute "the new sentence as beginning on the date it was imposed, and counting all prior times spent in custody for the offense as jail credit." This is what the Bureau originally did. Three months later it retreated from this computation and insisted that the sentences be treated as *nunc pro tunc* anyhow.

The government has several arguments that the Policy Statement should not be applied as written. First, it contends that the district judge has now clarified his 1981 intent and that *nunc pro tunc* sentencing was contemplated. What we have said already disposes of this contention.

Second, the Bureau contends that the 1981 sentences must be treated as *nunc pro tunc* because in 1981 Barnett had no right to treatment under the YCA and, since this conclusion is based on his right to such a determination in 1975, the sentence necessarily must be treated as beginning in 1975. No caselaw is cited in support of this contention. It is little more than a restatement of the argument that Barnett is to be treated as though his cases were disposed of in 1981 in one manner when in fact they were disposed of in another manner. If uniformly applied, it would mean that in every case where a sentence has to be corrected or vacated and reimposed after the defendant is more than 22 years old, the new sentence as a matter of law must be *nunc pro tunc*. But see *Puente v. U.S.*, 676 F.2d 141 (5th Cir.1982).

■ Barnett may get a windfall of shortened jail time out of what has occurred in this case. But neither the Bureau nor the district court can retrospectively reinstate vacated sentences and treat them as merely corrected. Nor can the Bureau depart from its Policy Statement that governs the treatment of resentencing after sentence has been vacated.

---

on December 1, 1981 that the action of this Court might well cause petitioner's Illinois sentence to run concurrent with the corrected sentences of this Court, such is not determinative of the present issue before the Court.

We are not clear exactly what this means. But it certainly does not mean that in 1981 the court expected that the Illinois and Georgia sentences would run consecutively for a total of 35 years.

The judgment of the district court is REVERSED and the case is REMANDED with direction to grant the writ of mandamus.