### UNITED STATES of America

v.

### Gregory Wayne BENSON.

### Crim. No. 89–00046–P.

United States District Court,
D. Maine.

Nov. 29, 1989.

---

Nicholas M. Gess, Asst. U.S. Atty., Portland, Me., for plaintiff.

James R. Bushell, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND TRIAL VERDICT

GENE CARTER, Chief Judge.

Defendant herein, Gregory Wayne Benson, was charged by an Indictment of the Grand Jury, returned on September 14, 1989, with violation of 18 U.S.C. section 2113(a) and (d). The Indictment reads as follows:

On or about September 6, 1989, in the District of Maine, defendant

### GREGORY WAYNE BENSON

by force and violence and by intimidation, did take from the person and presence of Nichele Galarneau, approximately seven hundred dollars ($700.00), belonging to and in the care, custody, control, management, and possession of the Coastal Savings Bank, Portland, Maine, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing said offense.

### GREGORY WAYNE BENSON

did assault and put in jeopardy the life of Nichele Galarneau by the use of a dangerous weapon, namely a gun.

In violation of Title 18, United States Code, Sections 2113(a) and 2113(d).

Indictment at 1–2. By this Indictment, the Government seeks conviction of Defendant for the offense of bank robbery as defined in 18 U.S.C. section 2113(a),[1] and the enhanced sentence provided for under section 2113(d).[2] On November 6th this Defendant entered into a Stipulation with the Government (Government's Exhibit 1) by which he conceded the fact of his commission of the bank robbery charged in the Indictment pursuant to the terms of section 2113(a). The Stipulation reads as follows:

It is hereby stipulated by and between the parties, the United States of America, represented by its attorneys, Richard S. Cohen, United States Attorney for the District of Maine, and Nicholas M. Gess, Assistant United States Attorney, and the defendant, Gregory Wayne Benson, personally and through his attorney, James R. Bushell, Esquire, that on September 6, 1989, Gregory Wayne Benson did by force, violence or intimidation, take from the person or presence of Nichele Galarneau, approximately seven hundred dollars ($700.00), belonging to or in the care of the Coastal Savings Bank, Portland, Maine, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

There thus remains for resolution in the case only the issue of whether the Government has proven beyond a reasonable doubt the elements of the statutory language set forth in section 2113(d) exposing

---

**1.** The provisions of section 2113(a) read, in pertinent part, as follows:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or ...

**2.** The language of the statute reads as follows:

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

Defendant to the enhanced sentence provided for therein.

On November 6, 1989, Defendant also executed a Waiver of Jury Trial and consented to be tried by the Court, sitting without jury. After inquiry in open court, the Waiver of Jury Trial was approved by this Court. The trial on the merits of the remaining issue was held on November 8, 1989.

The Government's evidence at the trial consisted of the testimony of the bank teller who was the victim of the charged robbery, Nichele Galarneau, and Portland Police Detective Daniel Young, who investigated the robbery and interviewed Ms. Galarneau shortly after it occurred.

Ms. Galarneau testified that as of September 6, 1989, she had been employed for a period of approximately four months as a bank teller by the Coastal Savings Bank of Portland, Maine, at its branch office in City Center in Portland, Maine. She said that a few minutes before 4:00 p.m. on September 6, 1989, an individual who she identified as Defendant got in line before her teller's station, behind a female customer upon whom she was then attending. As soon as the female customer left the front of the teller's station, Defendant approached the counter in front of the teller's station, leaned on the counter, and said, "This is a holdup." She did not immediately take the remark seriously. She did, however, move her right hand to transfer her keys from the bottom drawer on her side of the counter to the top drawer where "bait money" was kept and where an alarm could be activated. Defendant at that stage inquired what she was doing. She replied that she was attending to her keys. Defendant then said, "This is a holdup. I have a gun." She said Defendant's hand was in the left side pocket of his leather jacket at the time he made this remark and that he motioned to her with that hand. At that time she saw "something silver," which she took to be a gun. She said that it appeared to be a gun and concluded that it was an automatic pistol because she saw no hammer on it and because of "the shape of the top."

She then opened the top drawer and asked Defendant what he wanted. Defendant replied, "hundreds." She held a stack of one hundred dollar bills out to him, and he took them from her hand and left the bank.

She further testified that she and Defendant were approximately twenty-four inches apart over the counter of her teller's station at the time of the robbery and that Defendant leaned with his left elbow on the counter in front of the station for at least part of that time. She said she could not see into his pocket but could see his wrist and an object in the pocket. She acknowledged that she could not see "very much" of what was in the pocket. She described what she could see, on cross-examination, as a silver-colored object. She conceded that she saw no handle, hammer or barrel of the object. Defendant never took the object out of his pocket. He did not display a gun to her and did not at any time point the gun or any object at her. She was "nervous" at the time of the occurrence, but at no time indicated that she had been placed in a state of fear by Defendant's conduct.

She also testified that she was taken after the robbery by Detective Young to an interview room at the Portland Police Station. While there, Detective Young took her to his office and asked her to point out on a Smith & Wesson handgun poster the type of weapon she believed she saw. She said that she picked out a gun of the general type in question.

Detective Young testified that he was assigned to investigate the robbery in question and that he went to the bank after it had occurred and interviewed Ms. Galarneau. He later that afternoon interviewed her again in a conference room at the Portland Police Station, in the course of which he took her to his office and showed her the Smith & Wesson handgun poster (Government's Exhibit 2). He asked her to point out the type of handgun she believed to be in Defendant's pocket during the robbery. He testified that she pointed out an automatic-type weapon. He was not certain as to which of two weapons (Model

669 or 639) she indicated. He said that she "pointed right to the firearm."

Detective Young also said that Ms. Galarneau told him that Defendant did not take the gun out of his pocket and that she believed she saw "the top of a silver automatic pistol."

The Government also put in evidence, as Government's Exhibit 1, the Stipulation of the parties referred to hereinabove.

Defendant testified at the trial, indicating in pertinent substance that he had decided to rob the bank in question on September 6, 1989, more or less on the spur of the moment. He walked by the bank once and then walked back by it approximately thirty minutes later, at which time he decided to enter the bank and rob it. He said he needed money to get out of town because of threats that had been made against him by others. He acknowledged that he did tell Ms. Galarneau that he had a gun. He did not display any object to her. Initially he said that he had his left hand at his side, but later acknowledged that it may have been in his pocket.

Defendant stated that he did not have any gun with him at the time of the robbery but that he did have an aluminum-handled army knife in his pocket. He said he also had a red magnet and a finger ring in one of the pockets of the jacket. He said he never displayed the knife to Ms. Galarneau in the first instance, but then acknowledged that "it might have stuck out of my pocket." He acknowledged that he wanted her to believe that he had a gun. He also testified that he had never owned any gun and that on September 6, 1989 he did not have a gun in his possession. Defendant was impeached by the Government on cross-examination by proof of numerous prior convictions for felony offenses.

A violation of section 2113(d) is established only if the Government proves that Defendant put Nichele Galarneau in jeopardy at the time of the robbery or that Defendant assaulted Nichele Galarneau during the robbery *and* Defendant performed such acts by the use of a dangerous weapon or device. 18 U.S.C. § 2113(d); *Larson v. United States*, 172 F.2d 386 (6th Cir. 1949) ("assault" provision read disjunctively with "in jeopardy" provision). Thus, the Government must prove that a defendant used a dangerous weapon or device in order to prove either the assault or jeopardy element of section 2113(d). *Simpson v. United States*, 435 U.S. 6, 11 n. 6, 98 S.Ct. 909, 912 n. 6, 55 L.Ed.2d 70 (1978). The Court finds that that the Government met its burden of establishing that Defendant put the teller's life in jeopardy by use of a dangerous weapon.

Although the Court finds that the Government did not prove that Defendant carried a firearm at the time of the robbery,[3] it is clear that Defendant was carrying a dangerous weapon. The Supreme Court has held that a gun need not be loaded to be a dangerous weapon. *McLaughlin v. United States*, 476 U.S. 16, 17, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986). In keeping with *McLaughlin* and the legislative debate prior to the enactment of section 2113(d), a toy or mock gun is also a dangerous weapon although it cannot fire a projectile. 78 Cong.Rec. 8132–33 (May 5, 1934); *United States v. Martinez–Jimenez*, 864 F.2d 664, 666 (9th Cir.1988).

During the course of the robbery, Defendant *intended* and *succeeded* in using the silver knife in his pocket as a mock gun in order to scare the teller into providing him with bank funds. Defendant accomplished this by informing the teller he had a gun while removing his hand sufficiently out of his pocket to give the teller a look at a silver metal object which was his knife and which looked to the teller to be a gun. It was only when Defendant undertook this threat that the teller supplied Defendant with the bank funds. Thus, Defendant's mock gun creation, which looked like a gun and caused the reaction in others that a gun might cause, was a dangerous weapon.

**3.** The Court concludes that Ms. Galarneau testified truthfully to what she believed she saw. However, on the whole record, the Court finds that she was, in the circumstances she described, honestly mistaken in believing that the object in Defendant's pocket was a firearm.

Furthermore, the item selected by Defendant to be a mock gun, namely an army knife, is a dangerous weapon in and of itself. *United States v. Jenkins*, 665 F.2d 47 (2d Cir.1981) (defendant convicted of 18 U.S.C. § 2113(d) for brandishing a knife during holdup); *United States v. Combs*, 634 F.2d 1295 (10th Cir.1980) (robber convicted of 18 U.S.C. § 2113(d) for threatening teller with a knife). Thus, it is clear that Defendant committed the robbery with the use of a dangerous weapon.

Defendant's use of a dangerous weapon clearly put the teller's life in danger. Defendant argues that the Court ought to adopt an objective approach to the jeopardy element of section 2113(d). A purely objective approach would be one in which this element could only be proved if the alleged robber had the *actual* ability to put a victim's life in danger or to inflict injury as opposed to the robber having only the *apparent* ability. *See e.g. United States v. Thomas*, 521 F.2d 76, 80–81 (8th Cir.1975); *United States v. Marshall*, 427 F.2d 434, 437–38 (2d Cir.1970). The Court finds that it need not decide this theoretical issue because Defendant is clearly shown by the evidence to have been carrying a knife. He had both the actual and the apparent ability to inflict bodily harm on the teller.[4] Thus, under any formulation, Defendant's use of his knife/mock gun during the robbery put the teller's life in danger and manifests a violation of 18 U.S.C. § 2113(d).

Accordingly, the Court finds Defendant to be *GUILTY* as charged in the Indictment herein. The Court *FURTHER ORDERS* that the preparation of the custom-ary Presentence Investigation Report be commenced.

---

**4.** Although the Court need not decide whether a conviction under section 2113(d) is permissible only if the robber had the *actual ability* to harm a victim, it is unlikely, in light of the legislative history of section 2113(d) and the Supreme Court's ruling in *McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986), that the United States Congress intended a purely objective test.

An important reason for holding that an unloaded gun, fake bomb, or toy gun are dangerous weapons for the purposes of section 2113(d)

is that the display of such a "weapon" instills fear in the average citizen and creates a danger that the unloaded weapon may evoke a violent response from police or others. *See McLaughlin v. United States*, 476 U.S. 16, 17–18, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986). In light of this reasoning, it would be incongruous to then require that the robber have the actual ability to harm a victim in order to satisfy the requirements of section 2113(d). All the cases cited by Defendant were decided prior to the *McLaughlin* decision.